**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **ERIC RICH** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil action no. 1:20-cv-00488** |
| **OFFICER DANIEL HERSL,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', BALTIMORE POLICE
DEPARTMENT, FORMER COMMISSIONER FREDERICK BEALEFELD, AND
FORMER MAJOR NATHAN WARFIELD, MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

Dana P. Moore
ACTING CITY SOLICITOR

Justin S. Conroy (Federal Bar No. 28480)
Deputy Chief Legal Counsel
Kara K. Lynch (Federal Bar No. 29351)
Chief Solicitor
James A. H. Corley (Federal Bar No. 30016)
Assistant Solicitor
Baltimore City Law Department
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
Telephone: (410) 274-8614
Facsimile:  (410) 396-2126
E-mail: justin.conroy@baltimorepolice.org
        kara.lynch@baltimorepolice.org
        jim.corley@baltimorecity.gov

*Attorneys for BPD, Bealefeld and Warfield*

# TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................. 3

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT ................................................................................................................... 5

I.   Rich's claims are time-barred. ............................................................................... 5

  A.   *Rich's Section 1983 illegal arrest and false imprisonment claims are time-barred.* ......... 6

  B.   *Rich's remaining Section 1983 claims are time-barred.* ..................................... 8

II.  Rich's § 1983 claims against BPD, Bealefeld and Warfield fail. ...................... 9

  A.   *The Complaint does not state a claim for failure to train, supervise or discipline.* ......... 11

    1.   Baltimore Police Department ........................................................... 11

    2.   Bealefeld and Warfield ..................................................................... 17

  B.   The Complaint does not state a claim under the condonation theory. ....................... 19

III. The Complaint fails to state a claim for supervisory liability. .......................... 21

IV.  Counts V and VI should be dismissed with prejudice because BPD is not an appropriate defendant to civil conspiracy claims. ........................................... 23

  A.   *There is no express cause of action for conspiracy under 42 U.S.C. § 1983.* ................. 24

  B.   *The intracorporate conspiracy doctrine precludes a cause of action under §§ 1983 and 1985 against BPD.* ................................................................................. 24

V.   Rich's claims for punitive damages under § 1983 against BPD, Bealefeld and Warfield fail as a matter of law. ........................................................................... 26

VI.  BPD, Bealefeld and Warfield are entitled to Eleventh Amendment immunity. ........... 26

VII. Plaintiff's RICO claims fail.. ................................................................................. 29

CONCLUSION ............................................................................................................. 31

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **ERIC RICH** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil action no. 1:20-cv-00488** |
| **OFFICER DANIEL HERSL,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', BALTIMORE POLICE DEPARTMENT, FORMER COMMISSIONER FREDERICK BEALEFELD, AND FORMER MAJOR NATHAN WARFIELD, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

On February 24, 2020, Plaintiff Eric Rich initiated this action by filing his original Complaint. ECF 1. This case was referred to Magistrate Judge Boardman on July 23, 2020 for settlement. ECF 13. On September 3, 2020, the Parties participated in a settlement conference, but were unable to resolve the case. On September 29, 2020, Plaintiff filed his Amended Complaint against Officer Daniel Hersl, the Baltimore Police Department ("BPD"), former Major Keith Tiedemann, former Major Nathan Warfield, former Chief Grayling Williams, former Chief Rodney Hill, Major Ian Dombroski, Major Stephanie Lansey-Delgado, ("IA Defendants"), former Commissioner Leonard Hamm, former Commissioner Frederick Bealefeld, former Commissioner Anthony Batts, former Commissioner Kevin Davis, former Commissioner Darryl DeSousa, former Commissioner Gary Tuggle, and Commissioner Michael Harrison ("Commissioner Defendants") alleging various federal constitutional torts and state torts. *See* ECF No. 17. The Amended Complaint contains eleven total counts and added eleven new Defendants. *Id.* Specifically alleged against BPD, the Commissioner Defendants and the IA Defendants are: 1) 42 U.S.C. § 1983, 1985

Civil Conspiracy (Count V), 2) 42 U.S.C. § 1983, 1985 Aiding and Abetting (Count VI), 3) 42 U.S.C. § 1983, 1985 Failure to Supervise (Count IX), 4) 18 U.S.C. § 1961 Violation of RICO Act (Count X), and 5) 18 U.S.C. § 1962(d) Conspiracy to Violate RICO Act (Count XI). Additionally, alleged against only BPD and the Commissioner Defendants are: 6) 42 U.S.C. § 1983, 1985 Unconstitutional Custom or Practice of Unlawful Arrest and Improper use of Police Powers (Count VII), and 7) U.S.C. § 1983, 1985 Inadequate Training (Count VIII).

Defendants BPD, Bealefeld, and Warfield, by and through undersigned counsel,[1] move to dismiss Plaintiff's Amended Complaint with prejudice and without leave to amend because: 1) on its face, the Complaint (and thus, the Amended Complaint) was filed after the expiration of the statute of limitations; 2) BPD Defendants are immune from suit in this Court pursuant to the Eleventh Amendment to the United States Constitution; 3) the Complaint fails to state a claim upon which relief can be granted and Plaintiffs failed to comply with the notice provisions of the Local Government Tort Claims Act.[2]

Defendants BPD, Bealefeld and Warfield also move to dismiss because Rich's claims are time-barred. Additionally, BPD, Bealefeld and Warfield move to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted. Alternatively, and in addition, BPD and Bealefeld

---

[1] This motion is filed on behalf of BPD, Bealefeld, and Warfield. The remaining Defendants have not been served and/or waivers of service have not yet been effectuated.

[2] Plaintiff states he filed a complaint with BPD's Internal Affairs Division ("IAD") sometime between October 29, 2007 and April 23, 2008. See *Id*. at 98, 103. Plaintiff's attorney then requested a copy of his IAD complaint, which was denied. *Id.* at 100. Plaintiff asserts this request provided constructive notice to BPD as required by the Local Government Tort Claims Act. *Id*. However, Plaintiff's request for his IAD file did not apprise the proper officials, or in the alternative, the individuals or unit responsible for investigating tort claims against the BPD, that Plaintiff was pursuing a claim for damages. *Bibum v. Prince George's Cty*, 85. F. Supp,. 2d 557, 564 (D. Md. 2000).

and Warfield, in their official capacities, move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) because BPD and its officials have immunity in federal court pursuant to the Eleventh Amendment to the United States Constitution.[3]

## **FACTUAL BACKGROUND[4]**

The Amended Complaint alleges that on October 2, 2007, Plaintiff Rich was arrested by Defendant Hersl and Officer Calvin Moss[5] in Baltimore City, Maryland. ECF 17, ¶ 95. Plaintiff was arrested and charged with possessing an unregistered firearm under Maryland law. *Id*. at ¶ 96. Due to a prior conviction, Plaintiff was prohibited from possessing a handgun. *Id*. at 98. Plaintiff was subsequently indicted on additional charges under Maryland law, including possession of a firearm with a felony conviction. *Id.*

---

[3]   Although the instant Motion is filed only on behalf of certain Defendants, the arguments contained herein are applicable to all Defendants. Indeed, the grounds for dismissing this suit with prejudice, and without leave to amend, are based on well-established law and compel dismissal of this matter as to all Defendants. As the Fourth Circuit has explained, "district courts have an inherent power to grant summary judgment ***sua sponte*** so long as the party against whom summary judgment is entered has notice 'sufficient to provide [it] with an adequate opportunity to demonstrate a genuine issue of material fact.' " *Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (quoting *U.S. Development Corp. v. Peoples Fed. Sav. & Loan Ass'n,* 873 F.2d 731, 735 (4th Cir. 1989)) (granting summary judgment *sua sponte* in favor of all defendants where Plaintiff already had notice and opportunity to demonstrate a genuine issue of material fact, based on another co-defendant's motion for summary judgment").; *see also* Fed. R. Civ. P. 56(f); *Johnson v. Montminy*, 285 F. Supp. 2d 673, 674 (D. Md. 2003), *aff'd*, 95 Fed.Appx. 18 (4th Cir. 2004) (affirming summary judgment *sua sponte* where non-moving Defendant "stands in the same legal position as other defendants and ... is entitled to summary judgment").

[4] Defendants recite the facts as pled in the Complaint. This recitation should not be construed as a concession or admission of any of the facts contained therein.

[5] Plaintiff named Officer Calvin Moss as a defendant in his original complaint. ECF 1, ¶ 3. Plaintiff voluntarily dismissed his case against Defendant Moss on June 25, 2020  *See* ECF 11, 12.

On or about March 20, 2008, Plaintiff was indicted by the U.S. Attorney's office on federal charges stemming from his October 2007 arrest. *Id*. at ¶ 101. The state charges against Plaintiff were dismissed by way of a *nolle prosequi* on or about April 23, 2008. Id. at ¶ 103. Plaintiff filed a motion to compel production of Internal Investigation Division files in his federal case, on or about June 4, 2008. *Id*. at 104. Plaintiff's motion was granted in part and denied in part on or about June 6, 2008. *Id.* at 105. On or about June 9, 2008, the U.S. Attorney's office dismissed Plaintiff's indictment with prejudice and he was released from incarceration. *Id*. at 106.

Rich filed suit on February 24, 2020, *more than twelve years* after the Officer Defendants allegedly violated his constitutional rights, and *more than eleven years* after the State entered a *nolle prosequi* and the U.S. Attorney's Office dismissed his federal indictment with prejudice. *See* ECF No. 1, 17.

## **STANDARD OF REVIEW**

The claims asserted against movants fail on multiple grounds. **First**, Rich's claims are time-barred. A limitations defense may be asserted in a Rule 12(b)(6) motion to dismiss for failure to state a claim where, as here, the allegations in the Complaint reveal that an action is untimely under governing law. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (noting a court may grant a motion to dismiss based on limitations "where facts sufficient to rule on an affirmative defense are alleged in the complaint"); *see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."); *Litz v. Md. Dep't of Env't*, 434 Md. 623, 641-42 (2013) ("[A] motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is barred by the statute of limitations unless it

is clear from the facts and allegations on the face of the complaint that the statute of limitations has run."). Rich's claims are barred by Maryland's three-year statute of limitations, Md. Code, Cts. & Jud. Proc. Art. ("CJP"), § 5-101, which applies to both state and federal claims. Nor does the Complaint, on its face, provide any basis for the tolling of Rich's claims.

**Second**, the Complaint is insufficient under the *Iqbal/Twombly* framework. The Supreme Court has instructed federal courts to use a two-pronged approach in analyzing the sufficiency of pleadings: (1) the principle that the court should accept the truth of factual allegations is inapplicable to conclusory allegations; and (2) a complaint only survives a Rule 12(b)(6) motion where it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2009).

**Third**, this Court lacks subject matter jurisdiction; therefore, dismissal is required. Rule 12(b)(1) states a party may assert by motion the defense of lack of subject matter jurisdiction. Although the Fourth Circuit has "been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)," *see Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000), the Court explained that although the Eleventh Amendment is "not a true limit on the subject-matter jurisdiction of federal courts, [it] is a block on the exercise of that jurisdiction." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (citations and internal quotation marks omitted). A motion under Rule 12(b)(1) raises the question of "whether [Plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim . . ." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

## ARGUMENT

## I.     Rich's claims are time-barred.

Rich alleges that, on October 2, 2007, the Officer Hersl unlawfully stopped him and planted a firearm on him. ECF No. 17, ¶¶ 95-112. Rich subsequently was arrested, charged with possessing an unregistered firearm under Maryland law, and later with possession of a firearm with a felony conviction. *Id*. He was later indicted by the U.S. Attorney's office on related charges and detained pending trial. *Id*. at ¶¶ 101-102. The state charges against Rich were *nolle prossed* on April 23, 2008. *Id*. at 103. On June 9, 2008, the U.S. Attorney's Office dismissed Rich's indictment and he was released from incarceration. *Id*. at 106.

One February 2, 2019, Rich filed suit. ECF No. 1. All of Rich's claims are barred by Maryland's three-year statute of limitations. CJP, § 5-101. Because Rich knew of the injury when it occurred and possessed sufficient facts at the time about the harm done to him to have a complete and present cause of action, the three-year statute of limitations period ended, at the latest, on June 8, 2011. Since he filed his Complaint on February 2, 2019, all of his claims are time-barred. Furthermore, the Complaint pleads no allegations sufficient to toll the accrual of his claims. Thus, this Court must dismiss Rich's claims as untimely, with prejudice and without leave to amend.

### A. Rich's Section 1983 illegal arrest and false imprisonment claims are time-barred.

In assessing the timeliness of claims brought under § 1983, courts look to the law of the state in which the action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Although the limitations period is borrowed from state law, the time for accrual of a claim is a question of federal law. *Id.* at 388; *Owens v. Balt. City State's Attorneys' Office*, 767 F.3d 379, 389 (4th Cir. 2014). The time at which accrual occurs is "presumptively when the plaintiff has a complete and present cause of action." *Wallace*, 549 U.S. at 388 (internal quotations omitted) (citations omitted). Federal courts "look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine

the date on which the limitations period for this most analogous tort claim would begin to run." *Owens*, 767 F.3d at 389 (citations omitted). The standard rule is that a claim accrues when the plaintiff *knows or has reason to know* of the injury which is the basis of the action. *Wallace*, 549 U.S. at 388. The date of accrual occurs "when a plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)).

Rich asserts illegal arrest (Count I) and false imprisonment claims (Counts II)[6] against Defendant Hersl as the predicate constitutional violation to support his *Monell* and § 1983 supervisory liability claims; however, these claims are untimely. In *Wallace v. Kato*, the Supreme Court opined, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. at 389. Thus, the *Wallace* Court concluded that the "petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date . . . We conclude that the statute of limitations on petitioner's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial." *Id*. at 390-91.

Rich's illegal arrest and false imprisonment claims are barred by limitations as his cause of action under this particular theory accrued at the time that legal process was initiated against

---

[6] Although Rich pleads these claims separately, the torts of false arrest and false imprisonment are the same under Maryland law. *See Okwa v. Harper*, 360 Md. 161, 189-90 (2000). The torts of false arrest and false imprisonment "overlap" because "[e]very confinement of the person is an imprisonment." *Wallace*, 549 U.S. at 388-89. Therefore, these claims may be addressed simultaneously as the legal analysis is the same.

him, that is, on or about October 2, 2007 and March 20, 2008. ECF No. 17 ¶¶ 95-101. The holding in *Wallace* is clear: Rich had three years from the date he was held over for process to file suit for torts which accrued pre-process. Therefore, limitations ran on or about March 20, 2011. Rich filed suit on February 2, 2019, <u>nearly 8 years late</u>.

Alternatively, even if the Court were to interpret these claims as being most analogous to the common law tort of malicious prosecution, the statute of limitations for such claims is three years from the date of favorable determination. In this case, the date that Rich's federal indictment was dismissed was June 9, 2008. *See Owens*, 767 F.3d at 390 ("[T]he operative limitations period began to run on the date a malicious prosecution claim became ripe at common law, i.e., the date on which the *nolle prosequi* was entered.") The limitations period begins to run in both common-law malicious prosecution and fabrication of evidence claims "once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of [*Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994)]." *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019). Therefore, under this theory, limitations ran on or about June 9, 2011, and Rich's claims still are time-barred.

**B.     *Rich's remaining Section 1983 and 1985 claims are time-barred.***

Similarly, Rich's remaining claims asserted under §§ 1983 and 1985 are time-barred as a matter of law, and no legal theories or amendments to his allegations will permit his suit to be successful. Rich was aware of all of the facts necessary to bring a cause of action for civil conspiracy and "aider and abetter" (*i.e.* Counts V and VI) on October 2, 2007, or, at the very latest, June 9, 2008 (the date his federal charges were dismissed). As Judge Young held in *Lewis v. Clark*, "[u]nder the federal rule, the time of accrual is that point in time when the plaintiff knows or has reason to know of the injury which is the basis of the action." 534 F. Supp. 714, 716 (D. Md. 1982),

*abrogated on other grounds by McDonough*, 139 S. Ct. 2149 (citations omitted). "[I]t is the awareness of the facts giving rise to the cause of action and not the awareness that the illegality of the action is conclusively provable that begins the running of the statute of limitations." *Id.* at 716-17.

Without question, Rich's claims are barred as a matter of law. Rich's criminal proceeding resolved in his favor on June 9, 2008 when the U.S. Attorney's Office dismissed all remaining charges against him. ECF No. 17 ¶ 106. Therefore, because Rich did not bring suit until February 24, 2020, more than 11 years after the favorable determination of his criminal cases, this Court must dismiss all claims against BPD, Bealefeld and Warfield.

## II.      Rich's § 1983 claims against BPD, Bealefeld and Warfield fail.

Because all of Rich's claims are time-barred, this Court does not need to reach a decision on Rich's *Monell* claims as there is no predicate constitutional violation on which to base those claims. However, should this Court conclude that Rich's claims are not time-barred, his *Monell* claims still are deficient because Rich fails to state a claim upon which relief may be granted.

Section 1983 provides a remedy against "any person" who, under color of law, deprives another of rights protected by the United States Constitution. 42 U.S.C. § 1983. A municipality is liable under § 1983 when "the unconstitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y*, 436 U.S. 658, 694 (1978)). However, a municipality may be found liable only if two elements are met: (1) an unconstitutional policy or practice must exist, and (2) the municipality must have *caused* the constitutional violation. *See Monell*, 436 U.S. at 690; *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997); *Lytle v. Doyle*, 326

F.3d 463, 471 (4th Cir. 2003); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

To satisfy the first element, a party may show the existence of an unconstitutional "policy" or "custom" in one of four ways: (1) a formal policy, regulation or ordinance; (2) an express decision of an official with "final policymaking authority"; (3) the municipality's failure to train its employees, such that the municipality was "deliberately indifferent" to the constitutional rights of its citizens; or (4) a "persistent and widespread practice" of unconstitutional conduct by municipal employees so as to become a "custom or usage" of the municipality. *See Connick*, 563 U.S. at 60-61; *Brown*, 520 U.S. at 403-04; *Lytle*, 326 F.3d at 471; *Carter*, 164 F.3d at 218; *Spell*, 824 F.2d at 1391; *Milligan*, 743 F.2d at 229.

The second element of a *Monell* claim (causation) is a high hurdle because a complaining party must prove the unconstitutional policy or custom was the "moving force" behind the violation of his or her rights. *See Connick*, 563 U.S.at 60-61; *Brown*, 520 U.S. at 404; *Carter*, 164 F.3d at 218; *see also Lytle*, 326 F. 3d at 471-74; *Spell*, 824 F.2d at 1391; *Milligan*, 743 F.2d at 230. However, liability only exists "where the municipality ***itself*** causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (citation omitted). Federal courts apply ***rigorous standards*** of culpability and causation to § 1983 *Monell* claims, especially where a party is contending that either "inadequate training" or "widespread and persistent constitutional abuses" caused the violation of his or her rights. *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train") (citations omitted); *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the

municipality is not held liable solely for the actions of its employee."). However, "local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (citations and internal quotation marks omitted). There must be an "affirmative link" between the identified policy or custom and the specific violation that is attributable to the municipality. *Spell*, 824 F.2d at 1389.

Although not entirely clear from the Complaint, Rich appears to allege liability under the third and fourth types of *Monell* theories against BPD, and Bealefeld and Warfield, in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."). For the reasons that follow, Rich fails to allege facts sufficient to survive a motion to dismiss under any *Monell* liability theory.

### A.   *The Complaint does not state a claim for failure to train, supervise or discipline.*

#### 1.   **Baltimore Police Department**

Rich does not state a plausible claim for relief against BPD with respect to training, supervision or discipline. He fails to adequately identify any specific, factual bases for these claims and does not sufficiently plead any causal link between Defendant Hersl's alleged actions and any failure(s) in BPD's training, supervision, or discipline that amount to a deliberate indifference to his constitutional rights.

A municipality's *Monell* liability "is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Liability will attach only "[i]n limited circumstances." *Id.* Where a claim is based on inadequate training, a plaintiff must establish "a ***specific deficiency*** rather than general laxness or ineffectiveness in training." *Spell*, 824 F.2d at 1390 (emphasis added). Instead, "the plaintiff must allege facts that reveal: (1) the nature of the training, (2) that the training was a deliberate or conscious choice by the municipality, and (3) that the officer's conduct resulted from

said training." *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. 2018)

(citations omitted). As Judge Russell stated:

> The nature of the training element requires more than bald assertions that police officers were not properly trained. It is not sufficient to state in broad, conclusory terms and in a variety of different ways that the police department failed to train and supervise its officers. Nor is alleging a general laxness or ineffectiveness sufficient to state a claim. Instead, a plaintiff must allege a specific deficiency with the training.

*Id.* (internal citations and quotations omitted). The *McDowell* Court ultimately dismissed the

claims against the BPD to the extent that they were based on a failure to train because the plaintiff

did not address "specific aspects of [the] training program," and held that "[a]bsent any factual

detail about the training program, [plaintiff] fails to state a claim." *Id*.

Furthermore, in order to keep a § 1983 *Monell* claim from collapsing into *respondeat*

*superior* liability, federal courts require plaintiffs to prove that the municipality was "deliberately

indifferent" to the specific risk of constitutional injury alleged in the pleadings. *See*, *e.g.*, *Connick*,

563 U.S. at 61; *Brown*, 520 U.S. at 411; *Canton*, 489 U.S. at 388. Deliberate indifference is an

extremely high standard of fault, *i.e.*, mere negligence and/or even gross negligence are **never**

sufficient to meet the standard. *See Connick* 563 U.S. at 61; *Brown*, 520 U.S. at 407 (finding that

"a plaintiff must demonstrate that the municipal action was taken with 'deliberate indifference' as

to its known or obvious consequences . . . [a] showing of simple or even heightened negligence

will not suffice"); *Riddick*, 238 F.3d at 524 ("A municipality is not subject to section 1983 liability

simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the

plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the

'moving force' behind the injury alleged.'") (citation omitted). Instead, a § 1983 *Monell* plaintiff

must not only show that the municipality knew of the particular risk of constitutional injury, but

also that the municipality *actually drew the inference* that its response to the risk was inappropriate in light of that risk. *See Brown*, 420 U.S. at 410; *Riddick*, 238 F.3d at 525-26.

Moreover, a plaintiff must establish "that the specific deficiency or deficiencies [are] such as to make the specific violation ***almost bound to happen***, sooner or later, ***rather than merely likely*** to happen in the long run." *Spell*, 824 F.2d at 1390 (emphasis added) (internal quotation marks omitted). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [the local government], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. A single incident of misconduct by a police officer is not sufficient to state a claim for inadequate training. *See Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Similarly, allegations of singular or isolated unconstitutional acts are insufficient to meet the "deliberate indifference" standard. *See*, *e.g.*, *Brown*, 520 U.S. 398.

In the instant case, Rich concludes, without citing any relevant facts in support, that BPD failed to adequately train, discipline, and supervise its officers. Although Rich identifies a list of areas he alleges BPD "conspired with the Defendant Officers" to "be deliberately indifferent" to "the need for more or different training, supervision, investigation or discipline," this is insufficient for several reasons.[7] *See* ECF No. 17 ¶ 8. First, Rich never adequately identifies *specific* training programs or failures. Allegations of mere "laxness or ineffectiveness in training" are insufficient. *Spell*, 824 F.2d at 1390. Because he fails to establish any specific deficiencies, Rich also cannot

---

[7] Notably, Rich's list contains a glaring omission: planting and/or fabricating evidence, which is the factual scenario alleged in the Complaint.

show how the alleged training caused the conduct of the Officer Defendants *in this case*; therefore, he fails to plead, as he must, how the alleged training deficiencies caused his constitutional deprivation.

Furthermore, Rich never provides a timeframe during which these unspecified training failures occurred; therefore, he fails to plead that BPD had *notice* of the training deficiencies before Rich's injury and subsequently was deliberately indifferent in the face of them. Aside from these conclusory allegations that merely recite general legal elements, Rich fails to plead that any alleged failure to train, supervise, or discipline was a deliberate or conscious choice by BPD. He merely alleges that "BPD's officers have been allowed to engage in unlawful practices absent proper training, including excessive force, unlawful arrest, and improper use of police powers." ECF No. 17 ¶ 160. Such broad, conclusory statements that merely recite legal elements with no factual support are exactly what the *Iqbal/Twombly* pleading standard prohibits. A plaintiff must establish "that the specific deficiency or deficiencies [are] such as to make the specific violation ***almost bound to happen***, sooner or later, ***rather than merely likely*** to happen in the long run." *Spell*, 824 F.2d at 1390 (emphasis added) (internal quotation marks omitted). Rich fails to do so.

Rich claims his allegations are "supported by" a sporadic list of four (4) cases taking place between approximately 2009 and 2016.[8] *See* ECF No. 17 ¶¶ 33-66. However, what is glaringly

---

[8] Rich attaches several exhibits connected to these cases. Although a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits," *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted), a court may exercise its discretion in choosing (or not) to consider extrinsic documents. But "before treating the contents of an attached or incorporated document as true, the district court should consider the *nature* of the document and *why* the plaintiff attached it." *Id.* at 167 (citation omitted) (emphasis added). On the other hand, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* Here, the Court should exercise *great* caution in considering the exhibits attached to the Complaint. For example, three of the exhibits (ECF Nos. 17-3, 17-6, and 17-7) are filings in various unrelated criminal matters, filed

obvious is that none of the listed cases involve the lone Officer Defendant in this case, and all four

cases occurred between one and eight years after all charges against Rich had been dismissed.[9]

Additionally, Rich fails to allege deliberate indifference *on the part of the BPD* with respect to

these incidents. Rather, he repeatedly alleges the ways in which the Baltimore City State's

Attorney's Office ("BCSAO"), an agency not controlled or directed by the BPD and that is not

named as a defendant in this case, was deliberately indifferent. *See, e.g.*, ECF No. 17 ¶¶ 41-43, 51,

54, 62, 65. Thus, he fails to satisfy the second element (causation) of his *Monell* claim.

Ironically, the four cases upon which Rich relies actually show the opposite of what he

intends. In the 2009 Gary Brown case, Rich pleads facts demonstrating BPD was *not* deliberately

indifferent, stating that the agency gave a copy of the case file to the BCSAO in order for the

officer to be investigated. ECF No. 17 ¶ 40. However, "[d]espite the fact that the investigation by

Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June

14, 2010, the Baltimore City State's Attorney's Office's Doug Ludwig sent a letter to Internal

Affairs stating [the BCSAO] would not be pursuing charges against the officers involved in the

theft." ECF No. 17 ¶ 41. Thus, Rich pleads that BPD investigated the incident (and, thus, was not

deliberately indifferent), but the BCSAO declined to pursue charges.

Rich then jumps ahead five (5) years to cite another case that did not involve the Officer

Defendant in this case, Defendant Hersl. Rich again lays blame at the door of the BCSAO, alleging

---

either by a defense attorney or the prosecutor in the case. Thus, they show nothing more than that
these filings were, in fact, filed, and it is not appropriate to treat their contents as true. They are
one-side documents, filed by the parties as they advocated their positions in the underlying
unrelated criminal matters. As such, they should be disregarded.

[9] Rich's state charges were dismissed on April 23, 2008 and his federal charges were dismissed
on June 9, 2008. ECF 17 ¶¶ 95-106. The earliest date involving the four cases Rich uses as his
support is the June 8, 2008 arrest of Gary Brown. ECF 17. ¶ 33.

that the BCSAO failed to advise BPD of an important aspect of a GTTF officer's behavior. ECF Nos. 17 ¶¶ 50-51 (explaining that in a "Memo of Referral" to Defendant Dombroski, the BCSAO "would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemel Rayam in cases "where Jemel Rayam is an essential witness." Plaintiff then states that despite these concerns "Officer Jenkins[10] was permitted to continue policing the streets of Baltimore") Rather than demonstrating deliberate indifference by BPD, Bealefeld or Warfield, Rich instead pleads facts demonstrating that BPD was (1) not put on notice, and (2) did not act with deliberate indifference.

Rich next cites the Rakeem Douglas case, which occurred in November 2016, *see* ECF No. 17 ¶¶ 52-54, nine years after the incident in this case, stating, "Defendant BPD took no corrective actions" despite a "glaring omission made by the Baltimore City State's Attorney's Office, which would have been made known to [BPD]." Id. at ¶ 54. Since this case occurred approximately nine years *after* the instant case, it could not have provided notice to BPD of any alleged deficiencies in training, discipline or supervision relevant to the *Monell* analysis in this case. Nor could it have served to provide notice to BPD regarding any of the alleged misconduct of the Officer Defendant Hersl as he was not involved in the Rakeem Douglas case. Finally, Rich alleges a glaring omission on the part of the BCSAO, not the BPD, and such an omission cannot be imputed from one agency to another. Similarly, the final case Rich cites also fails to involve Defendant Officer Hersl. *See* ECF No. 17 ¶¶ 55-66. Once again, Rich makes allegations against the BCSAO rather than BPD, stating twice that the BCSAO objected to disclosures regarding a GTTF officer not involved in the instant matter. ECF No. 17 ¶¶ 62, 65.

---

[10] Defendants assume that Plaintiff intended to state Officer Rayam was permitted to continue policing the streets of Baltimore.

Finally, Rich relies on the 2016 Department of Justice ("DOJ") report, ECF No. 17 ¶¶ 67-73, and the GTTF federal indictments generally, ECF No. 17 ¶¶ 74-83, to support his claims. His reliance is misplaced. As both the DOJ report[11] and the federal indictments occurred well *after* the instant matter, they cannot show that BPD was aware of any deficiencies at the time of Rich's alleged constitutional deprivation.

In sum, Rich fails to allege any facts to support an inference that the BPD as an agency was deliberately indifferent to or tacitly condoned, sanctioned, or authorized the alleged unconstitutional conduct of the single Officer Defendant named in his Amended Complaint. He fails to show that BPD was "deliberately indifferent" in the face of the obvious consequences of inadequate or constitutionally deficient training, discipline, or supervision. These barebones, conclusory allegations are categorically insufficient because they are devoid of any factual detail and fail to establish a causal link between BPD and the alleged unconstitutional actions.

### 2. Bealefeld and Warfield

Rich does not state a plausible claim for relief against former Commissioner Bealefeld or former Major Warfield with respect to failure to train, supervise or discipline. In lieu of factual support, Rich merely inserts Bealefeld's and Warfield's names into the Complaint and recites

---

[11] In addition, on its face, the DOJ Report forecloses a showing of deliberate indifference to constitutional violations. The City of Baltimore itself requested the DOJ investigation. The United States "commend[ed] the City and the BPD for working cooperatively with the [DOJ], recognizing the need for reform, and taking the initiative to begin the reform process. *See* "Agreement in Principle between the United States and the City of Baltimore Regarding the Baltimore City Police Department" at page 1 (August 9, 2016), available electronically at, https://www.justice.gov/opa/file/883376/download (last visited October 17, 2019). The DOJ Report states that "BPD leadership took a cooperative and professional approach to our investigation and provided important insights into the challenges facing the Department. *See* "U.S. Department of Justice, Civil Rights Division, Investigation of the Baltimore City Police Department", at page 22 (August 10, 2016) available electronically at https://www.justice.gov/opa/file/883366/download (last visited October 17, 2019).

various legal standards. Rich does not allege any specific facts about the training program or point to any specific deficiencies in the training, supervision or discipline. Although Rich does make a general claim that Palmere "actively coached the officers of Defendant BPD's Gun Trace Task Force and other officers," he makes this assertion without any factual support.[12] The barebones, conclusory allegations in the Complaint are categorically insufficient because they are devoid of factual detail.

Finally, Rich does not offer any facts that make it plausible that the failure to train, supervise or discipline *caused* the Defendant Officers to violate his rights. *See McDougald*, 2019 WL 1226344, at *15 ("Fail[ure] to draw a connection between the incident [] and any precise shortcoming in the BPD training program" is a "defect [that] cannot be ignored."). Rich alleges that the Officer Defendants stopped him without legal cause and planted heroin on him. He does not point to any training program or policy that condones this type of action; instead, the allegations portray actions of rogue criminals, not officers acting within the scope of employment. Indeed, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [the local government], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91.

Because Rich does not properly identify the nature of the training, plead facts to show that the alleged failure to train, supervise or discipline was a deliberate or conscious choice, or plead

---

[12] This assertion appears to be an allusion to a newspaper article regarding an unrelated case that involved a GTTF officer not involved in the instant matter. *See* Baltimore Sun, Top-ranking Baltimore Police official retires, denies he coached gun task force officer on how to avoid punishment, available at https://www.baltimoresun.com/news/crime/bs-md-ci-palmere-retiring-20180205-story.html (accessed October 18, 2019). However, mere speculative assertions and references to news reports are not sufficient to satisfy the pleading standard.

facts to show that the lack of training, supervision or discipline caused his constitutional deprivation, Rich's claims must be dismissed.

### B. The Complaint does not state a claim under the condonation theory.

Likewise, Rich fails to show that there was a "persistent and widespread practice" of unconstitutional conduct by municipal employees so as to become a "custom or usage," or that BPD, Bealefeld or Warfield were deliberately indifferent in the face of such persistent and widespread practices.

A municipality may be liable under the condonation theory if policymakers fail "to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens*, 767 F.3d at 402 (quoting *Spell*, 767 F.3d at 402). Conduct is persistent and widespread only when it is so flagrant and pervasive that it has the same effect as an official policy. *See Spell*, 824 F.2d at 1386 ("And the existence of such custom or usage may be found in persistent and widespread practice of municipal officials which, although not authorized by written law, **are so permanent and well-settled as to have the force of law**.") (cleaned up) (emphasis added).

As with the "failure to train" *Monell* liability theory, allegations of isolated unconstitutional acts, are insufficient to meet the "deliberate indifference" standard. *See*, *e.g.*, *Brown*, 520 U.S. at 398; *Lytle*, 326 F.3d at 473 ("It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes") (citations omitted); *Carter*, 164 F.3d at 218 ("Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation."). Courts have determined that a "meager history of isolated incidents" does not "approach the widespread

and permanent practice necessary to establish municipal custom." *Carter*, 164 F.3d at 220 (citations and internal quotation marks omitted).

Additionally, when a plaintiff seeks to establish a policy or custom based on "persistent or widespread practices," the federal court must "rigorously test the chain of causation." *See Connick*, 563 U.S. at 75; *Brown*, 520 U.S. at 415. In order to survive a motion to dismiss, a plaintiff must support his condonation claim with facts which, if proven, would state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Therefore, a municipality violates § 1983 under the condonation theory of liability only when policymakers fail "to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens*, 767 F.3d at 402 (internal quotation marks omitted). The pattern of unconstitutional conduct must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Carter*, 164 F.3d at 218 (internal quotation marks omitted).

Even if a plaintiff states allegations sufficient to plausibly plead a widespread and flagrant practice of constitutional violations, a complaint must contain sufficient allegations that the municipality was deliberately indifferent to, or was the moving force behind, the alleged violation of the complainant's constitutional rights. Thus, "[a] municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality." *Riddick*, 238 F.3d at 524. Rather, a municipal actor must have consciously disregarded "a known or obvious consequence" of his action. *See Brown*, 520 U.S. at 410.

The Complaint is devoid of the factual enhancement necessary to support a condonation claim. Rich fails to demonstrate a necessary persistent widespread practice or that BPD, Bealefeld or Warfield were deliberately indifferent to or consciously disregarded such a practice. Rich's conclusory allegations do not establish the type of widespread and flagrant constitutional violations the *Monell* jurisprudence contemplates. As the case law clearly establishes, "scattershot

accusations of unrelated constitutional violations" fail to prove either that a municipality was indifferent to the risk of [a plaintiff's] specific injury or that it was the moving force behind her deprivation." *Carter*, 164 F.3d at 218. The "meager history of isolated incidents" Rich presents does not constitute a widespread and persistent practice, let alone one that BPD actively condoned or ignored. Rich fails to plead how these examples are relevant to establishing that a persistent and widespread practice was present at the time of the instant case, let alone one that BPD, Bealefeld or Warfield actively condoned or ignored.

The Fourth Circuit warned against this type of "scattershot" pleading in *Carter v. Morris*, *supra*, 164 F.3d at 218. There, the court remarked that plaintiff "in essence claims that past generalized bad police behavior led to future generalized bad police behavior, of which her specific deprivations are an example. This nebulous chain fails the 'rigorous standards of culpability and causation' required for municipal liability under section 1983." *Id*. at 219 (citing *Brown*, 520 U.S. at 405). The pleadings must be specific and particularized; "[t]he challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights" and there must be a "close fit" between the unconstitutional policy and the constitutional violation. *Id*. at 218. As the Fourth Circuit explained:

> **Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover—our role is to decide concrete cases**. Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decisionmaker caused the violation of the specific federal rights of the plaintiff before the court.

*Id*. at 218-19 (emphasis added). Because Rich's claim lacks the necessary specificity, this Court should dismiss it.

## III.    The Complaint fails to state a claim for supervisory liability.

21.

Supervisory liability likewise fails. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. An accused defendant, including a supervisor, must be "personally involved" in the commission of the constitutional tort alleged in the pleadings in order to be liable under § 1983. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Courts have been cautioned to be especially vigilant that a plaintiff's theory does not "slip into that forbidden realm" where, as in this case, a plaintiff's theory relies on municipal omission. *Id*.

As the Fourth Circuit has said, "a supervisor can only be held liable for the failings of a subordinate under certain **narrow** circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (emphasis added). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). With respect to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id*. at 799 (quoting *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)). As to the second element, "a plaintiff [o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents. . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly

trained employees when he has no basis upon which to anticipate the misconduct." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (alteration in original). As to the third element, "'proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.'" *Wilkins v. Montgomery*, 751 F.3d 214, 226-27 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799).

IV.     **Here, supervisory liability fails for the same reasons *Monell* liability fails. Rich fails to state a claim because there is no allegation that Bealefeld or Warfield were personally involved in the deprivation of Rich's constitutional rights.  The allegations purport to show that leadership should have had knowledge of general misconduct, which is not specific to the type of alleged violations at issue *in this case*. *See Jones v. Chapman*, No. ELH-14-2627, 2015 WL 4509871, at \*24 (D. Md. July 24, 2015) (stating that supervisory liability cannot be established based on conclusory allegations that a supervisor "should have known about the unconstitutional conduct" or "general averments that a supervisor failed to respond to prior constitutional violations"). There also are insufficient allegations from which to infer that Bealefeld or Warfield knew of the alleged wrongdoings of Officer Defendant Hersl or were deliberately indifferent to the Hersl's violations of citizens' constitutional rights. Therefore, this Court should dismiss the claim to the extent that it is based on supervisory liability.Counts XIV and XV should be dismissed with prejudice because BPD is not an appropriate defendant to civil conspiracy claims.**

In Counts V and VI, Plaintiff seeks to hold the BPD liable under civil conspiracy and aider and abettor theories for alleged participation in a civil conspiracy to violate the United States Constitution under 42 U.S.C. §§ 1983 and 1985. ECF No. 17 ¶¶ 138-145. This Court should dismiss Counts V and VI with prejudice for two reasons: (1) § 1983 does not expressly create a cause of action for conspiracy; and (2) §§ 1983 and 1985 conspiracy claims may not be brought against municipal entities like the BPD.

## A. There is no express cause of action for conspiracy under 42 U.S.C. § 1983.

Although the Complaint states that Counts XIV and XV are brought under 42 U.S.C. §§ 1983 and 1985, of these only § 1985 expressly creates a cause of action for conspiracy. Therefore, the claims in Counts XIV and XV under § 1983 must be dismissed with prejudice.

Section 1983 makes no express statement regarding conspiracy. Although the Fourth Circuit has recognized that a plaintiff may establish a conspiracy under § 1983, such a claim requires that a plaintiff plead facts establishing the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992)). The Complaint is devoid any factual allegations pleading any *affirmative* direct actions taken by BPD in concert with any Defendant that resulted in Plaintiff's alleged constitutional deprivation. Accordingly, Counts XIV and XV must be dismissed with prejudice.

## B. The intracorporate conspiracy doctrine precludes a cause of action under §§ 1983 and 1985 against BPD.

Plaintiff's civil conspiracy (Count XIV) and aider and abettor claims (Count XV) against the BPD under 42 U.S.C. §§ 1983 and 1985 must be dismissed because they are not viable causes of action against a municipal government like the BPD.

The concept of a conspiracy between an entity and its employees has been rejected by the Supreme Court and Fourth Circuit under the intracorporate conspiracy doctrine. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984); *Buschi v. Kirven*, 775 F.2d 1240, 1251-52 (4th Cir. 1985); *see also Bumgardner v. Taylor*, RDB-18-1438, 2019 WL 1411059, at *5-6 (D. Md. Mar. 28, 2019) (dismissing plaintiff's §§ 1983 and 1985 conspiracy claims asserted against BPD); *Burgess v. Balt. Police Dep't*, RDB-15-0834, 2016 WL 795975, at *10-11 (D. Md. March 1, 2016)

(dismissing plaintiffs § 1983 conspiracy claim asserted against defendant BPD police officers based on the application of the intracorporate conspiracy doctrine); *Kangalee v. Balt. City Police Dep't*, RDB-12-01566, 2012 WL 5457231, at *7 (D. Md. Nov. 7, 2012) (holding that the BPD could not be sued under §§ 1985 and 1986 for engaging in an alleged conspiracy with Baltimore police officers because the BPD and its officers constitute the "same legal entity").

It is fundamental that "you must have two persons or entities to have a conspiracy." *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). The intracorporate conspiracy doctrine holds that "'[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir. (1985) (quoting *Nelson*, 200 F.2d at 914). Therefore, "agents from a single legal entity are 'legally incapable of conspiracy, which requires multiple parties acting together.'" *Williams v. Mayor of Baltimore City*, No. WMN-14-1125, 2014 WL 5707563, at *6 (D. Md. Nov. 4, 2014) (quoting *Lewin v. Cooke*, 28 F. App'x 186, 195 (4th Cir. 2002) (citation omitted)). "Although originating in antitrust, the doctrine applies with equal force to civil rights cases." *Burgess*, 2016 WL 795975, at *10 (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985)). Because BPD and its officers constitute the "same legal entity," they cannot conspire with one another as a matter of law.

Finally, a viable § 1985 claim must allege "facts with particularity which indicate intentional discrimination on the basis of racial animus or any other class-based discriminatory animus on the parts of the Defendants . . . [and] establish[] that there was 'an agreement or a 'meeting of the minds' by [the][D]efendants to violate [his] constitutional rights.'" *Langworthy v. Dean*, 37 F. Supp. 2d 417, 424-25 (D. Md. 1999) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995)). The Complaint is devoid any such factual allegation(s) against BPD.

Because no cause of action against the BPD can lie under 42 U.S.C. § 1985, Rich's civil conspiracy and aider and abettor claims must be dismissed with prejudice. Additionally, and for the same reasons, all other claims against the BPD § 1985 also must be dismissed with prejudice.[13] *See also Burley*, ELH-18-1743, ECF No. 51 at 63 (D. Md. Sept. 12, 2019) (dismissing all plaintiffs' § 1985 conspiracy claims *sua sponte*).

**V.     Rich's claims for punitive damages under § 1983 against BPD, Bealefeld and Warfield fail as a matter of law.**

Rich's claims for punitive damages must fail as a matter of law. First, BPD is immune from punitive damages because the Supreme Court held that municipalities are immune from punitive damages under 42 U.S.C. § 1983. *City of Newport News v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981). Second, punitive damages may be awarded in a § 1983 action only if a defendant's conduct is motivated by evil intent or reckless or callous indifference. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Kolstad v. Ada*, 527 U.S. 526, 538 (1999) ("[E]ligibility for punitive awards is characterized in terms of a defendant's motive or intent. Indeed, the justification of exemplary damages lies in the evil intent of the defendant. Accordingly, a positive element of conscious wrongdoing is always required.") (citations and internal quotation marks omitted). Thus, the case law emphasizes the need for bad motive or intent on the part of a defendant. At the very least, there must be conscious wrongdoing.

Rich has not alleged *any facts* to show that BPD, Bealefeld or Warfield maintained a custom or policy that caused Rich's injury, much less an evil motive or intent to deprive him of due process. Accordingly, Rich's punitive damages claims—like the rest of the claims against BPD, Bealefeld and Warfield—must be dismissed.

**VI.     BPD, Bealefeld and Warfield are entitled to Eleventh Amendment immunity.**

Defendants BPD, Bealefeld and Warfield are aware of recent decisions denying BPD Eleventh Amendment immunity. *Burley v. Balt. Police Dept.*, 1:18-cv-01743-ELH, ECF Nos. 51, 52 (D. Md. Sept. 12, 2019); *see also Parks v. Balt. Police Dept.*, 1:18-cv-03092-TDC, ECF No. 86 (D. Md. Sept. 9, 2019) (Chuang, J., same). However, counsel for Defendants BPD, Bealefeld and Warfield believe there remains considerable uncertainty regarding liability under *Monell*, especially given that the Fourth Circuit has not yet ruled upon whether Eleventh Amendment immunity applies to state agencies such as the BPD. *See Burley*, ECF No. 51 at p. 54 ("To my knowledge, the Fourth Circuit has not directly addressed this issue.").

Courts generally look to four factors in determining whether an entity operates as an arm-of-the-State: (1) whether judgments against the entity will be paid by the State; (2) the degree of autonomy exercised by the entity; (3) whether the entity is involved with state concerns; and (4) how the entity is classified under state law. *See, e.g., Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136-38 (4th Cir. 2014). Previously, the impact of an adverse judgment on the State treasury was considered the most important factor; however, the law has evolved such that no one factor should be given conclusive effect. *Owens*, 767 F.3d at 379 n.5. In fact, the Supreme Court stated that the preeminent purpose of immunity is to "accord the States the respect owed to them as joint sovereigns." *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 767 (2002).

As to the factors, first, BPD's status as a state agency under Maryland law is not disputed. Second, BPD is involved in state-wide concerns in terms of its use of statewide databases, MOUs with other Maryland police departments, and its holding and cataloging of firearms and other evidence for other police agencies. *See also* PLL § 16-2(b) (outlining duties outside the City in areas controlled or operated by the MCC). In addition, Baltimore welcomes millions of tourists,

hosts events (e.g., Camden Yards, First Mariner Arena, Pier 6, National Aquarium) which attract visitors from all across the state. *See e.g.*, *Hill v. Jamestown-Yorktown Found.*, 2019 WL 3084242, at 7 (E.D. Va. Jul. 15, 2019) (finding state-wide concerns in the operation of local museums that had a role in "shaping the fundamental principles of the American constitutional system."). Third, the City does not control the BPD for the reasons stated in *Estate of Anderson v. Strohman*, 6 F. Supp.3d 639 (D. Md. 2014). Although the City indemnifies BPD officers to the extent required by the LGTCA,[14] the BPD is entirely autonomous from the City. Abundant legal authority supports this point. *See*, *e.g.*, Section IV., *supra*, *Estate of Anderson*, 6 F. Supp.3d at 645-46 (stating that the City exercises no control over the actions of BPD officers, City officials are not responsible for training or disciplining BPD officers, and BPD officials have "very infrequent contact" with the City.)[15]; Balt. City Charter, Art. II, § 27 ("[N]o ordinance of the City or Act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner."); *Adams v. Balt. Transit Co.*, 203 Md. 295, 311 (1953) (emphasis added) ("The power to pass ordinances in regard to the prevention and removal of nuisances is in the Mayor and City Council but they are deprived of the power of enforcing them. The enforcement is the duty

---

[14] BPD is defined as a "local government" only for the limited purposes of the LGTCA, *see* CJP, § 5-301(d)(21), because its employees were excluded from the MTCA. *Houghton v. Forrest*, 412 Md. 578, 589 (2010) (noting that city police are not defined as state personnel under the MTCA, codified at Md. Code, State Gov't Art., §§ 12-101, *et seq.*). This is an idiosyncratic operation of state law, which does not affect BPD's status as a state agency. *See*, *e.g.*, *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 323 (2001) ("[b]y adding the [BPD] to the list of local governments in the LGTCA, therefore, the General Assembly waived the [BPD's] common law state sovereign immunity only to the extent of the statutory duties to defend and indemnify. Otherwise, the [BPD's] state sovereign immunity remained intact.").

[15] Furthermore, in *Young v. City of Baltimore*, Judge Russell reiterated that "to the extent that *Wilcher* and *Hector* held otherwise, *Anderson* set new precedent and is the controlling law [. . .] the Baltimore City Police are not controlled, managed, or supervised by the City of Baltimore." No. GLR-16-1321, 2017 WL 713860, *2 (D. Md. Feb. 23, 2017).

of the police department **which is under the control of the State**."); *Upshur v. Balt.*, 94 Md. 743, 756 (1902) (". . . municipal authorities have no right to interfere with that control [of the BPD]"); *Chin v. City of Balt.*, 241 F. Supp.2d 546, 549 (D. Md. 2003) ("[T]he Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions."). As discussed previously, the BPD is treated as a State agency under Maryland law. Pursuant to the Public Local Laws of Baltimore City, the City does not have any responsibility for the management of the BPD and may not adopt any rules or regulations governing the BPD. *See* PLL § 16-7. Fourth, although the City pays BPD judgments, this factor is not dispositive. *See Harter v. Vernon*, 101 F.3d 334 (4th Cir. 1996). Furthermore, the Public Local Laws allow for the appropriation of funds by the General Assembly to defend BPD Officers. PLL § 16-13. For these reasons, just as *Monell* claims are not cognizable for the activities of the Maryland State Police, they are not cognizable for the activities of BPD, an agency of state government.

Accordingly, the Complaint against BPD, and against Bealefeld and Warfield, who as State officials, also have Eleventh Amendment immunity, should be dismissed with prejudice and without leave to amend.

**VII.    Plaintiff's RICO claims fail.**

As with the rest of his suit, Plaintiff's RICO claims is ripe for dismissal.  Against all Defendants, Plaintiff has brought a violation of RICO under 18 U.S.C. § 1961, *et seq.* (Count X) and a Conspiracy to Violate RICO Act under 18 U.S.C. § 1962(d) (Count XI).  Although Plaintiff asserts that this claim is brought against all Defendants, he only claims that "BPD, the Gun Trace Task Force, and its Internal Affairs Division are all enterprises within the meaning of 18 U.S.C. 1961(4)."  ECF 17 ¶ 182.  As an initial matter, neither the "Gun Trace Task Force" nor "Internal

Affairs Division" are Defendants in this case. Only BPD has been named as a Defendant, and could arguably qualify as an "enterprise" for purposes of these causes of action. Of course, Plaintiff's argument on this point misses the mark, and is nothing more than an attempt to bring a second *Monell*-type claim against BPD. As with the rest of his claims, he is time-barred from proceeding.

The Racketeer Influenced and Corrupt Organizations law ("RICO") does provide a civil cause of action, which is "'is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'" *Donaldson v. Primary Residential Mortg., Inc.,* No. CV ELH-19-1175, 2020 WL 3184089, at *22 (D. Md. June 12, 2020) (internal citations omitted). In order for a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." *Chambers v. King Buick GMC, LLC,* 43 F. Supp. 3d 575, 588 (D. Md. 2014).

More importantly, civil "RICO claims are governed by the same four-year statute of limitations applicable to Clayton Act actions." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987); *see also Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987) (analyzing the applicable statute of limitations for RICO claims, the Court explained that "with the similarities in purpose and structure between RICO and the Clayton Act, the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act strongly counsels in favor of application of the 4–year statute of limitations used for Clayton Act claims." The "injury and pattern discovery" rule does not govern the start of the 4-year limitations period, as this would "extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Rotella v. Wood*, 528 U.S. 549, 551, 558 (2000). Instead, the Court left remaining the "injury discovery rule (preferred

by a majority of Circuits to have considered it)." *Id.*, at 554. As this Court has held, "the limitations period runs from the date when the plaintiff discovered, or should have discovered, the injury." *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. CV ELH-17-3420, 2019 WL 1441812, at *11 (D. Md. Mar. 31, 2019) (citing *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001).

As noted above, Plaintiff's underlying criminal charges (the favorable disposition of which drive all operative statute of limitations dates) were two-fold. Plaintiff was charge by the State of Maryland, and these charges were dismissed on April 23, 2008. Plaintiff was also federally charged, and these charges were dismissed on June 9, 2008. Plaintiff was required to file any civil RICO suit within four years, at the latest on June 9, 2012. He failed to do so. Thus, as with the rest of his Amended Complaint, Counts X and XI must be dismissed, with prejudice and without leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants BPD, Bealefeld and Warfield respectfully request that this Court dismiss Plaintiff's Amended Complaint, with prejudice and without leave to amend, as to all Defendants, or in the alternative dismiss all claims against BPD, Bealefeld and Warfield. To the extent that any State law claims survive, this Court should decline to exercise supplemental jurisdiction under

Respectfully submitted,
Dana P. Moore, Acting City Solicitor


_____/s/_____
Justin S. Conroy (Federal Bar No. 28480)
Deputy Chief Legal Counsel
Kara K. Lynch (Federal Bar No. 29351)
Chief Solicitor
James A. H. Corley (Federal Bar No. 30016)

Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday Street, Room 101
Baltimore, MD 21202
 (410) 274-8614 / (410) 396-2126 fax
jim.corley@baltimorecity.gov

*Attorneys for BPD, Bealefeld and Warfield*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th  day of November 2020, a copy of the foregoing was filed with the United States District Court for the District of Maryland by electronic filing. All counsel of record were served via the Court's electronic filing system.

_____/s/_____
James A. H. Corley (Federal Bar No. 30016)