IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC RICH,
    *Plaintiff*

    v.

DANIEL HERSL, et al.,
    *Defendants.*

Civil Action No. ELH-20-488

## MEMORANDUM OPINION

This civil rights case is rooted in the conduct of members of the now defunct and disgraced Gun Trace Task Force ("GTTF"), a unit within the Baltimore City Police Department ("BPD").

Plaintiff Eric Rich filed suit against a host of defendants on February 24, 2020, with respect to an incident that occurred in 2007. ECF 1. He also included several exhibits. Thereafter, on September 29, 2020, Rich filed an Amended Complaint (ECF 17), again supported by exhibits. The Amended Complaint names numerous defendants, including the BPD and former BPD officer Daniel Hersl. *Id.* ¶¶ 2, 3. In addition, Mr. Rich has sued former Major Keith Tiedemann, former Major Nathan Warfield, former Chief Grayling Williams, former Chief Rodney Hill, and former Major Ian Dombroski, each of whom previously led BPD's Internal Affairs Division ("Internal Affairs"), as well as Major Stephanie Lansey-Delgado, who currently leads that division (collectively, the "IA Defendants"). *Id.* ¶¶ 9-11. Further, Mr. Rich has sued the current BPD Commissioner, Michael S. Harrison, as well as six former commissioners of the BPD: Frederick Bealefeld, Leonard Hamm, Anthony Batts, Kevin Davis, Darryl De Sousa,[1] and Gary Tuggle

---

[1] Although the Amended Complaint uses the spelling "DeSousa," ECF 17, ¶ 17, publicly available sources indicate that the former Police Commissioner's last name is spelled "De Sousa." *See, e.g.*, *Former Baltimore Police Commissioner Darryl De Sousa Sentenced to Federal Prison for Failing to File Tax Returns*, United States Attorney's Office, District of Maryland (Mar. 29,

(collectively, the "Commissioner Defendants"). *Id.* ¶¶ 15-18. The individual defendants have been sued in their individual and official capacities.

Taking a "kitchen sink" approach, the Amended Complaint contains eleven counts, seeking both compensatory and punitive damages. The counts are summarized below, *see id.* at 23-37:[2]

- Count I (against Hersl) — "Illegal Arrest," in violation of Fourth and Fourteenth Amendments to the Constitution, pursuant to 42 U.S.C. §§ 1983, 1985, 1988;

- Count II (against Hersl) — "False Imprisonment," in violation of Fourth and Fourteenth Amendments, pursuant to §§ 1983, 1985, 1988;

- Count III (against Hersl) — "Malicious Prosecution," in violation of Fourth and Fourteenth Amendments, pursuant to §§ 1983, 1985, 1988;

- Count IV (against Hersl) — violation of Article 24 of the Maryland Declaration of Rights;

- Count V (against all defendants) — "Civil Conspiracy," pursuant to §§ 1983, 1985;

- Count VI (against all defendants) — "Aider & Abettor," pursuant to §§ 1983, 1985;

- Count VII (against BPD and the Commissioner Defendants) — "Unconstitutional Custom or Practice of Unlawful Arrest and Improper Use of Police Powers," pursuant to §§ 1983, 1985;

- Count VIII (against BPD and the Commissioner Defendants) — "Inadequate Training," pursuant to §§ 1983, 1985;

- Count IX (against BPD, the Commissioner Defendants, and the IA Defendants) — "Failure to Supervise," pursuant to §§ 1983, 1985;

- Count X (against all defendants) — "Violation of RICO Act," pursuant to 18 U.S.C. § 1962;

- Count XI (against all defendants) — "Conspiracy to Violate RICO Act," pursuant to 18 U.S.C. § 1962.

---

2019), https://www.justice.gov/usao-md/pr/former-baltimore-police-commissioner-darryl-de-sousa-sentenced-federal-prison-failing (last accessed May 18, 2021).

[2] Throughout the Memorandum Opinion, the Court cites to the electronic pagination, which does not always correspond to the page number imprinted on a particular submission.

BPD, Commissioner Bealefeld, and Major Warfield moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) (ECF 25), supported by a memorandum of law. ECF 25-1 (collectively, the "Motion"). At the time they submitted the Motion, the remaining defendants had not yet been served. ECF 25-1 at 4 n.1. But, they argue for dismissal of the suit as to all defendants. *Id.* at 5 n.3. Plaintiff opposed the Motion. The defendants who filed the Motion replied. ECF 27.

Thereafter, all of the remaining defendants, other than Hersl, filed a motion to dismiss, joining the arguments made in the Motion. ECF 39 (the "Supplemental Motion"). I shall refer to the Motion and the Supplemental Motion collectively as the "Motions." In his opposition to the Supplemental Motion, plaintiff incorporated by reference all of his arguments set forth in his opposition to the Motion. ECF 40.

Hersl did not join either motion. He answered the suit on February 2, 2021. ECF 41.

No hearing is necessary to resolve the Motions. Local Rule 105.6. For the reasons that follow, I conclude that plaintiff's civil rights claims are time-barred and thus subject to dismissal. But, defendants have not persuaded me, at this stage, that the RICO claims likewise warrant dismissal. Therefore, I shall grant the Motions in part and deny them in part.

## I. Background[3]

### A. Officer Hersl

In late September 2007, Hersl, then a BPD officer, "threatened to plant a gun" on Mr. Rich. ECF 17, ¶ 99. At a subsequent, unspecified time, plaintiff filed a complaint about the incident with Internal Affairs. *Id.*

---

[3] At this juncture, I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

On October 2, 2007, about one week after plaintiff's initial encounter with Hersl, plaintiff was arrested by Hersl and another BPD officer, Calvin Moss. *Id.* ¶ 95.[4] They "alleged Plaintiff was in possession of a Llama 9mm handgun." *Id.* ¶ 96. "Due to a prior conviction, Plaintiff was prohibited from possessing a handgun." *Id.* ¶ 98. Therefore, he was charged in "Maryland District Court" with "possessing an unregistered firearm," *id.* ¶ 96, and incarcerated pending trial. *Id.* ¶ 97. Thereafter, he was indicted on seven charges filed in the Circuit Court for Baltimore City, including possession of a firearm by a convicted felon. *Id.* ¶ 98.[5]

On March 20, 2008, Mr. Rich was indicted on federal charges stemming from the arrest of October 2, 2007. *Id.* ¶ 101; *see United States v. Rich*, RDB-08-131.[6] Rich remained detained pending trial in federal court. ECF 17, ¶ 102. As a result of the federal charges, on April 23, 2008, the State of Maryland entered a nolle prosequi as to the State charges. *Id.* ¶ 103.

In June 2008, defense counsel in the federal case filed a motion to compel the production of "Internal Investigation Division Files." *Id.* ¶ 104. Plaintiff does not specify the person whose files were sought, but presumably the files pertained to Hersl.

---

[4] Moss was initially named as a defendant in this suit. ECF 1, ¶ 3. But, plaintiff subsequently dismissed him. ECF 11; ECF 12. Moss is not named as a defendant in the Amended Complaint.

[5] Plaintiff states that he was indicted by the State of Maryland on October 29, 20**17**. ECF 17, ¶ 98. In particular, he was indicted on seven charges, including possession of a firearm by a felon. *Id.* Presumably, he meant October 29, 20**07**, not 2017.

Further, plaintiff states that, at that time, his lawyer requested a copy of Internal Affairs records concerning a complaint filed by plaintiff with respect to his earlier interaction with Hersl. *Id.* ¶ 100. The request was denied. *Id.* Plaintiff asserts that the request constituted constructive notice to BPD under the Local Government Tort Claims Act. *Id.*

[6] Plaintiff does not identify the federal case. But, pursuant to Fed. R. Evid. R. 201, the Court takes judicial notice of the case.

Hersl, a former member of the GTTF, was the subject of more than twenty-nine Internal Affairs complaints and investigations over several years. *See id.* ¶¶ 84-87. These complaints were no secret. For example, according to a newspaper article referenced in the Amended Complaint, a local defense attorney sent then-BPD Commissioner Hamm a letter in 2006 about various allegations lodged by citizens against Hersl. *See id.* ¶ 85 (referencing Gregory Kane, *Unreturned warrants indicate a bigger issue*, Baltimore Sun (Apr. 15, 2006), https://www.baltimoresun.com/news/bs-xpm-2006-04-15-0604150139-story.html (last visited May 18, 2021)).

In 2008, a criminal prosecution "was dropped" after Hersl's "lengthy Internal Affairs file was disclosed to the jurors." *Id.* ¶ 86. Hersl was also named in multiple civil lawsuits stemming from instances of his misconduct. For example, he was sued for "falsely arrest[ing] a woman . . . selling church raffle tickets"; breaking someone's arm while "search[ing] for another individual" in a store; and breaking the jaw and nose of a man whom he charged with drug possession. *Id.* ¶ 87.

In *United States v. Rich*, United States District Judge Richard Bennett granted the motion to compel, in part, on June 6, 2008. *Id.* ¶ 105. Following review by the government of the files that were produced, the government dismissed the indictment, with prejudice, on June 9, 2008. *Id.* ¶ 106. Plaintiff was then released from incarceration. *Id.*

### B. Other Allegations

According to the Amended Complaint, the IA Defendants and the Commissioner Defendants were long aware of illegal conduct by members of the BPD in the course of their employment. *Id.* ¶ 29. Among other things, police misconduct was the subject of various news articles. *See*, *e.g.*, *id.* ¶¶ 85-88. And, of relevance here, plaintiff claims that the IA Defendants

and the Commissioner Defendants knew of Hersl's "Longstanding Misconduct," *id.* at 17, and the consistent "mishandling of Internal Affairs." *Id.* ¶ 89.

Further, the Amended Complaint sets forth allegations regarding failure to train and failure to investigate and/or discipline BPD members for their misconduct. In addition, plaintiff includes factual allegations of misconduct by members of the GTTF, other than Hersl, as well as the subsequent federal prosecutions of various GTTF members. *Id.* ¶¶ 33-83.

I need not recite all of these factual allegations, because they are not necessary to the resolution of the motions. But, some context is helpful.

### 1. The GTTF Generally

In the Amended Complaint, Mr. Rich alleges various acts of misconduct by former members of the GTTF, other than Officer Hersl. *See id.* ¶¶ 33-42, 89, 93.

Some of these allegations pertain to former GTTF officer Jemell Rayam.[7] In June 2009, Rayam and officers Jason Giordano and Michael Sylvester, all in plain clothes, stopped Gary Brown in his vehicle. *Id.* ¶¶ 33-35. During the stop, the officers took over $11,000 in cash from Brown's vehicle, which Brown had obtained from "a 'cash out'" of the equity on his home. *Id.* ¶ 36. The officers also "threatened [Brown] with unlawful police actions," including "executing fraudulent search warrants on his house." *Id.* ¶ 37. A few days later, Brown lodged a complaint with BPD regarding the incident. *Id.* He also "took and passed a polygraph examination." *Id.* ¶ 38. Rayam and Giordano were subjected to such an examination, too. The results indicated "a greater than 99% chance that they were being deceptive" as to what had transpired. *Id.* ¶ 42.

---

[7] The Amended Complaint spells Rayam's first name as "Jamel." ECF 17, ¶ 33. But, submissions in the criminal prosecution of Rayam and other former GTTF officers indicate that his first name is spelled "Jemell." *See, e.g., United States v. Momodu Gondo, et al.*, CCB-17-106, ECF 1 (Indictment).

Nevertheless, the Baltimore City State's Attorney's Office ("SAO") declined to pursue charges against the officers. *Id.* ¶ 41.

The Amended Complaint describes another instance in which the BPD failed to investigate reports of Rayam's misconduct. *Id.* ¶ 44. In 2015, Rayam testified at a "Franks Hearing" in the Circuit Court for Baltimore City against Gary Clayton, a criminal defendant who had been investigated by the GTTF. *See id.* ¶ 47. The judge found that Rayam was not a credible witness and that he made "numerous factual misrepresentations." *Id.* Thereafter, the SAO sent a memo to the chief of the BPD's Police Integrity Unit, informing her of the "troubling events of the Franks Hearing," *id.* ¶ 49, and indicating that the SAO would "be making disclosures" to defense counsel about Rayam in cases "'where Rayam [was] an essential witness.'" *Id.* ¶ 50.

Defendant Warfield, then the head of Internal Affairs, was informed of the SAO's memo. However, according to the order of a Circuit Court judge issued in a different case, the BPD did not conduct an internal investigation into Rayam's testimony in the Clayton case. *Id.* ¶ 63. And, despite telling the BPD that it would disclose information about Rayam to defense counsel, the SAO declined to do so in subsequent criminal trials and resisted efforts by defense counsel to compel such information. *Id.* ¶¶ 53, 59-63.

Mr. Rich also alleges that the BPD received numerous complaints over the years concerning several other former members of the GTTF. *See id.* ¶¶ 89, 93. However, in some instances "meaningful investigations were not commenced." *Id.* ¶ 89. Even when internal investigations were conducted and "allegations were sustained, the BPD failed to properly reprimand the officers, permitting them to remain on the [police] force without appropriate punishment." *Id.*

In particular, two complaints were filed in 2012 against Evodio Hendrix, then a BPD officer, for false arrest and harassment. *Id.* ¶ 89(a). That year, a complaint was also lodged against former BPD officers Maurice Ward and Robert Mitchell. *Id.* ¶ 89(b). Although the City of Baltimore eventually "settl[ed] with the complainant for $150,000," Internal Affairs "deemed the complaint as 'Not Sustained.'" *Id.* In addition, between 2012 and 2016, nineteen "use of force claims" were filed against Marcus Taylor, then a BPD officer, "including two allegations of excessive force and eleven uses or attempted uses of a taser to a fleeing suspect." *Id.* ¶ 89(c). All of these claims were designated as "approved uses of force," closed, or not sustained. *Id.*

In March 2014, former Sergeant Wayne Jenkins and former Detective Ben Frieman struck a citizen with a police cruiser for allegedly pointing a BB gun at them. *Id.* ¶ 89(d). An Internal Affairs case concerning the incident was opened, but nothing came of it. *Id.* Years later, testimony from another former officer showed that the version of events recounted by Jenkins and Frieman was false. In particular, in 2019, Officer Keith Gladstone pleaded guilty "to arriving at the scene to plant the BB gun at Sergeant Jenkins' request." *Id.*

Jenkins was also the subject of other disturbing allegations. In 2015, BPD received a complaint from a citizen alleging that Jenkins had "dr[iven] his vehicle directly at [the complainant]." *Id.* ¶ 89(f). The complainant was later told that Jenkins' "'actions were rectified through verbal counseling.'" *Id.* But, Jenkins was not formally punished. *Id.* And, that same year, the BPD "was made aware of a whistleblower who attempted to alert them to the fact that . . . Jenkins was robbing citizens." *Id.* ¶ 89(g). Yet again, the "BPD failed to investigate." *Id.*

On February 23, 2017, a federal grand jury indicted seven members of the GTTF: Momodu Gondo, Hersl, Rayam, Jenkins, Hendrix, Ward, and Taylor. *See United States v. Momodu Gondo, et al.*, CCB-17-106, ECF 1 (Indictment); *see* ECF 137 (Superseding Indictment). They were

charged with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count One) and various violations of RICO (Count Two). *See United States v. Momodu Gondo, et al.*, CCB-17-106, ECF 1 (Indictment). The Superseding Indictment, ECF 137, charged Jenkins, Taylor, and Hersl. And, it added charges against Jenkins and Taylor for Hobbs Act Robbery and possession of a firearm in furtherance of a crime of violence against Jenkins and Taylor. *See id.*, Counts Three, Four, Five, and Six. All but Hersl and Taylor pleaded guilty. *See* CCB-17-106, ECF 156, 157, 195, 215, 257. They proceeded to a jury trial at which Judge Catherine Blake presided, and were convicted of racketeering conspiracy, among other crimes. ECF 17, ¶ 82. They were sentenced to eighteen years' imprisonment. *Id.*

In addition to the seven defendants in Case CCB-17-106, other BPD officers were charged with various offenses in connection with the GTTF. *See id.* ¶¶ 80, 81; *see also* CCB-17-452; CCB-17-0638.[8]

## 2. Department of Justice

On August 10, 2016, the United States Department of Justice ("DOJ") issued a report titled "Investigation Of The Baltimore City Police Department." *Id.* ¶ 67; ECF 17-9.[9] The report presented various conclusions about deficiencies in BPD operations. DOJ determined that "there

---

[8] The GTTF has been the subject of extensive media attention. It includes the publication by the Baltimore Sun of an "overview" of the prosecutions of the GTTF defendants. *See* Jessica Anderson, *Gun Trace Task Force Overview*, BALTIMORE SUN, https://data.baltimoresun.com/news/gun-trace-overview/ (last visited May 4, 2021); *see also Baltimore Police Gun Trace Task Force corruption case timeline*, BALTIMORE SUN, https://www.baltimoresun.com/news/crime/bs-md-baltimore-racketeering-case-timeline-20170906-htmlstory.html (last visited May 4, 2021).

[9] This DOJ report is publicly accessible. *See Justice Department Announces Findings of Investigation into Baltimore Police Department*, United States Department of Justice (Aug. 10, 2016), https://www.justice.gov/opa/pr/justice-department-announces-findings-investigation-baltimore-police-department (last visited May 6, 2021). Matters of public record are judicially noticeable, pursuant to Fed. R. Evid. 201.

is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law," and that this pattern or practice produces "unjustified disparities" in the rates of African Americans subject to stops, searches, and arrests by police. ECF 17, ¶ 68 (quoting ECF 17-9 at 4). As to the BPD, DOJ also found that inadequate training, deficient supervision of enforcement operations, and a "failure to hold officers accountable for misconduct" contributed to a pattern of unconstitutional policing. ECF 17, ¶ 72; *see id.* 70, 71.

## II. Standards of Review

### A. Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis*, Inc., 519 F.3d 192, 196 (4th Cir. 2008). Thus, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

The Fourth Circuit has reiterated that the defense of sovereign immunity is a jurisdictional bar, explaining that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640,

649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018); *see also*

*Cunningham v. Lester*, 990 F.3d 361,365 (4th Cir. 2021) (recognizing sovereign immunity as a

jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional

system"). Notably, "the burden of proof falls to an entity seeking immunity as an arm of the state,

even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams*

*v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773

F.3d 536, 543 (4th Cir. 2014)).

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss

under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312,

317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th

Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion

constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the

complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ.

P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading

requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the

rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement

to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556

U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at

605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

### III. Sovereign Immunity

Defendants contend that they are shielded from suit by state sovereign immunity under the Eleventh Amendment to the Constitution. ECF 25-1 at 28-31. Curiously, they bury this argument toward the end of the Motion—an unusual location to raise a threshold jurisdictional issue.

In a single paragraph, plaintiffs ask the Court to determine otherwise. He cites previous decisions by judges of this Court, concluding that BPD is not entitled to sovereign immunity. ECF

26-1 at 21 (citing, *inter alia*, *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986 (D. Md. 2019)). Defendants do not address the issue in their reply.

As both sides are aware, in recent opinions this Court has determined that, in regard to a claim under § 1983, the BPD is not a State agency for the purpose of sovereign immunity. *See Est. of Bryant v. Baltimore Police Dep't*, ELH-19-384, 2020 WL 673571, at *33 (D. Md. Feb. 10, 2020); *Grim v. Baltimore Police Dep't*, ELH-18-3864, 2019 WL 5865561, at *14-15 (D. Md. Nov. 8, 2019); *Burley*, 422 F. Supp. 3d at 1026; *see also Jones v. Chapman*, ELH-14-2627, 2015 WL 4509871, at *10 (D. Md. July 24, 2015). Moreover, numerous decisions in this District have reached the same result. *See, e.g.*, *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 532 (D. Md. 2020) (Gallagher, J.); *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 299 (D. Md. 2020) (Gallagher, J.); *Hill v. CBAC Gaming LLC*, DKC-19-0695, 2019 WL 6729392, at *4-5 (D. Md. Dec. 11, 2019) (Chasanow, J.); *Lucero v. Early*, GLR-13-1036, 2019 WL 4673448, at *4 (D. Md. Sept. 25, 2019) (Russell, J.); *Bumgardner v. Taylor*, RBD-18-1438, 2019 WL 1411059, at *5 (D. Md. Mar. 28, 2019) (Bennett, J.); *Fish v. Mayor of Baltimore*, CCB-17-1438, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018) (Blake, J.); *Humbert v. O'Malley*, WDQ-11-0440, 2011 WL 6019689, at *5 n.6 (D. Md. Nov. 29, 2011) (Quarles, Jr., J.); *Munyiri v. Haduch*, 585 F. Supp. 2d 670, 676 (D. Md. 2008) (Davis, J.); *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982) (Kaufman J.)

I am persuaded by the rationale of these decisions. Therefore, I conclude that defendants are not shielded by state sovereign immunity.

## IV. Limitations

Defendants assert that "[a]ll of Rich's claims are barred by Maryland's three-year statute of limitations." ECF 25-1 at 8. In their view, plaintiff's cause of action for his claims under 42

U.S.C. §§ 1983 and 1985 accrued no later than 2008, when the federal criminal charges against him were dismissed and he was released from incarceration. *See id.* at 8-13.

Plaintiff counters that he did not discover injury for purposes of his civil rights claims until March 2017, when the indictment of Hersl in the GTTF prosecution was made public. ECF 26-1 at 6. In the alternative, plaintiff contends that the limitations clock was equitably tolled. *Id.* at 6-9.

The defense of limitations is ordinarily not considered in the context of a motion to dismiss. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). However, when "it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller*, 224 F. Supp. 2d at 985; *see Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

## A.

At the outset, it bears emphasis that Counts X and XI, which assert civil RICO claims, are not subject to the same statute of limitations as the other counts, which are based upon 42 U.S.C. § 1983 and § 1985. Under federal law, a civil RICO claim is subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553 (2000); *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015). A different limitations clock governs civil rights claims asserted under §§ 1983 and 1985, both of which are subject to the same limitations rules. *See Lloyd v. Ocean Twp. Couns.*, ___ Fed. App'x ___, 2021 WL 1608553, at *1 (3d Cir. Apr. 26, 2021); *Jersey*

*Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999). Consistent with the parties' submissions, I shall refer only to § 1983 in the discussion that follows.

Section 1983 does not contain a statute of limitations. To determine whether a § 1983 claim was timely filed, courts look to the statute of limitations from the most analogous state-law cause of action. *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014), *cert. denied*, 575 U.S. 983 (2015); *see also* 42 U.S.C. § 1988(a) ("[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . . the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]"). Although the Maryland statute of limitations applies, "the time at which a § 1983 claim accrues 'is a question of federal law.'" *McDonough v. Smith*, ___ U.S. ___, 139 S. Ct. 2149, 2155 (2019) (citation omitted); *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (indicating that the question of accrual of a federal cause of action is decided under federal common law).

A suit filed pursuant to § 1983 constitutes a personal injury action. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2020 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."); *see Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011).

In Maryland, limitations statutes "are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v.*

*Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006).  And, "[a]s a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit."  *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Under federal law, an "accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed," and then "referring to the common-law principles governing analogous torts."  *McDonough*, 139 S. Ct. at 2155-56 (citation omitted).  The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Nasim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

In other words, under the so called discovery rule, a cause of action accrues when the plaintiff "has actual or constructive knowledge of his or her claim."  *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020).  That is, accrual cannot occur until the plaintiff has, or should have, "possession of the critical facts that he has been hurt and who has inflicted the injury."  *United States v. Kubrick*, 444 U.S. 111, 122 (1979); *see also, e.g.*, *Nasim*, 64 F.3d at 955; *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010), *aff'd*, 495 F. App'x 350 (4th Cir. 2012).  However, "the answer is not always so simple."  *McDonough*, 139 S. Ct. at 2155.  "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date."  *Id.*

Notably, this standard does not require complete knowledge.  A plaintiff need only possess "sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Nasim*, 64 F.3d at 955.  Once a plaintiff obtains knowledge "that he has been hurt and who inflicted the injury . . . . the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details

of [the offense] that are reasonably discoverable." *Id.* (brackets added); *see Canaan Christian Church v. Montgomery Cty., Maryland*, 491 F. Supp. 3d 39, 56 (D. Md. 2020).

As noted, federal law governs the issue of accrual. But, Maryland law is largely consistent with federal law. In Maryland, an action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole*, 423 Md. at 131, 31 A.3d at 236. But, Maryland has adopted the discovery rule, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," *Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004).

Under Maryland law, a plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 168, 857 A.2d 1095, 1104 (2004) (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–49, 550 A.2d 1155, 1159 (1988)) (alterations in original). The rule balances "principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc.*, 383 Md. at 167, 857 A.2d at 1104.

Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981). "Express knowledge is direct, whether written or oral, from sources 'cognizant of the fact[s].'" *Benjamin*, 394 Md. at 89, 904 A.2d at 529 (quoting *Poffenberger*, 290 Md. at 636–37, 431 A.2d at 681) (citation omitted). Implied notice occurs "when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further." *Pennwalt*, 314 Md. at 447, 550 A.2d at 1163. "The requirement for inquiry notice is that if a

person investigates diligently, the causal connection would be revealed." *Benjamin*, 94 Md. at 90, 904 A.2d at 529. Notably, under Maryland law, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Id.* at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Application of the discovery rule involves a two-prong test. The Maryland Court of Appeals has explained that the first prong, "sufficiency of the actual knowledge to put the claimant on inquiry notice," concerns "the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Pennwalt*, 314 Md. at 453, 550 A.2d at 1165–66 (noting that a plaintiff must have notice of the nature and cause of his or her injury); *O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313, 1324 (1986). The second prong, "the sufficiency of the knowledge that would have resulted from a reasonable investigation," requires that after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing. *Benjamin*, 94 Md. at 90, 904 A.2d at 529; *see Pennwalt*, 314 Md. at 452, 550 A.2d at 1165; *Baysinger v. Schmid*, 307 Md. 361, 367–68, 514 A.2d 1, 4 (1986).

## B.

Before delving into the analysis, it is necessary to address the peculiar table setting of the pending Motions. As indicated, Hersl has not moved to dismiss Counts I through IV, in which he is the only named defendant. Nor did he assert the defense of limitations in his answer. *See* ECF 41. Limitations is an affirmative defense. Because Hersl has not asserted the defense of limitations, he has waived it. *See* Fed. R. Civ. P. 12(b); *United States v. Wilson*, 699 F.3d 789, 792 (4th Cir. 2012) ("'It is well settled that the defense of limitations is waived unless asserted

promptly by way of answer or motion.'") (quoting *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985)).

Hersl's failure to plead limitations puts the case in an unusual posture. Ordinarily, it would be inappropriate for the Court to address the timeliness of the § 1983 claims in Counts I through IV, because the party against whom those claims are lodged has answered without a challenge. However, the moving defendants advocate for the dismissal of the five § 1983 claims in Counts V through IX and the two RICO claims in Counts X and XI, in which they are named as defendants, arguing the claims depend on Counts I through IV, and those counts are time barred. In the view of these defendants, even though they are not named in Counts I through IV, they are entitled to challenge the timeliness of those counts because those counts serve as predicates to the counts in which they are named as defendants. In other words, they contend that they are entitled to challenge limitations as to Counts I through IV, even though the defendant against whom those claims are asserted has not raised the defense of limitations.

Plaintiff does not object to the movants' argument as to the first four counts. Put another way, plaintiff does not rely on the ground that Hersl has not moved to dismiss those counts. And, given the nexus between Counts I through IV and Counts V through IX, consideration of Counts I through IV is appropriate.

In particular, Counts I through IV are foundational predicates to the other civil rights claims, which allege, in essence, an unconstitutional pattern and practice and a conspiracy within the BPD. Moreover, in Counts V through IX, plaintiff alleges that Hersl's alleged civil rights violations grew out of, or were connected to, that pattern and practice and conspiracy. Accordingly, the allegations in Counts I through IV are integral to the theory advanced in Counts

V through IX. Under these circumstances, the Court cannot address the timeliness of Counts V through IX without considering the timeliness of Counts I though IV.

Mr. Rich claims "Illegal Arrest" in Count I and "False Imprisonment" in Count II, in violation of the Fourth Amendment and the Fourteenth Amendment. ECF 17 at 23, 24. Both counts are asserted only against Hersl. *Id.* As noted, it is necessary to look first to Maryland law to ascertain the limitations period for Mr. Rich's § 1983 claims. The analogous State law causes of action are false arrest and false imprisonment, whose elements "are identical." *Pegues v. Wal-Mart Stores, Inc.*, 63 F. Supp. 3d 539, 542 (D. Md. 2014). Accordingly, it is appropriate to consider Counts I and II together.

In Maryland, the elements "of the tort of false arrest and false imprisonment are (1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification." *Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 523 (D. Md. 2015); *see Pegues*, 63 F. Supp. 3d at 542. To assess whether the alleged deprivation was without legal justification, the Maryland Court of Appeals looks to "the principles applicable to the law of arrest." *See Ashton v. Brown*, 339 Md. 70, 120, 660 A.2d 447, 472 (1995). Under these principles, an arrest or a detention made with legal authority—that is, pursuant to valid legal process—does not give rise to the tort of false arrest or false imprisonment. *See Montgomery Ward v. Wilson*, 339 Md. 701, 721, 664 A.2d 916, 926 (1995); *Green v. Brooks*, 125 Md. App. 349, 373, 725 A. 2d 596, 608 (1999) (Hollander, J.); *see also McDaniel v. Arnold*, 898 F. Supp. 2d 809 (D. Md. 2012).

Mr. Rich was arrested in October 2007 and was detained pending trial until his release in June 2008, when the charges against him were dismissed. *See* ECF 17, ¶¶ 95-106. Regardless of when exactly during that eight-month period the cause of action for false arrest and imprisonment accrued, plaintiff clearly was aware of the non-consensual deprivation of his liberty at all relevant

times. Thus, the three-year limitations clock began to run no later than June 2008. Plaintiff filed suit in 2020, well over three years after the end of the limitations period.

Neither side addresses whether the discovery rule as applied to this tort requires knowledge of the third element—that the deprivation of liberty was without legal justification. Even if such knowledge is required, the Amended Complaint reflects that plaintiff knew at the time that his arrest during pretrial detention was not made pursuant to valid legal process. Plaintiff alleges that then-Officer Hersl "threatened to plant a gun" on plaintiff and then arrested him one-week later, alleging that he was unlawfully in possession of a gun. ECF 17, ¶ 99. The subsequent criminal charges and detention flowed from that arrest. Hersl's threat gave plaintiff clear reason to believe that the grounds for the arrest and the charges were false.

Nevertheless, plaintiff contends that although he "was certain that Defendant Hersl threatened him" and that plaintiff was not in possession of a gun around the time of the arrest, he "could not be certain that a gun was not recovered during his arrest and simply misattributed to him." ECF 5 at 23. This contention does not sway the result. At a minimum, plaintiff had knowledge of his injury and the person who inflicted it, thus putting him on inquiry notice and "imposing on him a duty to inquire about the details" of the charges that were "reasonably discoverable." *Nasim*, 64 F.3d at 955.

The same logic applies to Count III, which lodges a claim of malicious prosecution against Hersl. To state a claim for malicious prosecution, a plaintiff must allege that (1) the defendant instituted or continued a criminal proceeding; (2) the proceeding was resolved in favor of the accused; (3) there was no probable cause for the proceeding; and (4) the defendant acted with malice, or for the primary purpose other than that of bringing an offender to justice. *See Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118, 130 (2000); *Garcia*, 145 F. Supp. 3d at 523. A person

who "instigates, aids, or assist[s] in a criminal prosecution" may be liable for malicious prosecution. *Smithfield Packing Co. v. Evely*, 169 Md. App. 578, 593, 905 A.2d 845, 854 (2006). A cause of action for a § 1983 claim premised on malicious prosecution accrues when the "underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough*, 139 S. Ct. at 2156.

As with Counts I and II, the Amended Complaint reflects that in June 2008, when the charges against plaintiff were dismissed and he was released from detention, he had sufficient knowledge to trigger the limitations clock. The claim is untimely.

Count IV asserts a claim against Hersl under Article 24 of the Maryland Declaration of Rights. It is also governed by the three-year statute of limitations established in C.J. § 5-101. *Barnhill v. Strong*, JFM 07-1678, 2008 WL 544835, at *2 (D. Md. Feb. 25, 2008). Although neither side discusses the particulars of this count in the briefs, the Amended Complaint indicates that it is premised on the theories of "excessive force, false imprisonment, false arrest, and intentional infliction of emotional distress." ECF 17, ¶ 134. For the reasons discussed above, plaintiff gained knowledge of his injury no later than June 2008. Accordingly, the claim is barred by limitations.

Count VII alleges unconstitutional custom, pattern, and practice against the BPD and the Commissioner Defendants. Count VIII alleges inadequate training against those same defendants. Count IX alleges a failure to supervise, and is asserted against BPD, the Commissioner Defendants, and the IA Defendants. ECF 17 at 32. Because all three counts contain allegations of an unconstitutional pattern or practice (*see* ECF 17, ¶¶ 147-48, 156-67), I construe these counts as claims brought pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

Municipal liability "arises only where city employees take constitutionally offensive acts in furtherance of municipal policy or custom." *Burgess v. Goldstein*, ___ F.3d ___, 2021 WL 1936046, at *15 (4th Cir. May 14, 2021). Therefore, a plaintiff cannot state a claim against local governments or supervisors of local governmental entities "without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013); *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when the jury has concluded that the officer inflicted no constitutional harm."); *see also, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) (same).

As stated, Hersl has not asserted the bar of limitations. But, the movants have done so. And, as discussed, for purposes of the *Monell* claims against the movants, plaintiff's predicate claims in Counts I through IV, lodged against Hersl, are untimely. *See Miller*, 224 F. Supp. 2d at 985 (explaining that the defense of limitations may be raised in a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6)). Cases such as *Anderson* and *Heller*, cited above, teach that without a viable predicate claim, a plaintiff cannot state a *Monell* claim or a supervisory liability claim.

Generously construed, Mr. Rich's opposition could be taken to suggest that the circumstances of this case warrant a deviation from the usual rule regarding the relationship between predicate claims and *Monell* § 1983 claims. Mr. Rich seems to imply that although his § 1983 cause of action against Hersl accrued no later than 2008, and is thus time barred, his § 1983 claims against the remaining defendants are nevertheless timely because the underlying facts only became available in 2017.

However, the allegations in the Amended Complaint reflect that Mr. Rich was put on inquiry notice of his *Monell* claims as of 2008. As discussed, in June 2008, during the federal prosecution of plaintiff, he moved to compel the production of BPD's "Internal Investigation Division Files." ECF 17, ¶ 104. The motion was granted, in part. *Id.* ¶ 105. And, the government's review of those files led to the dismissal of the prosecution against plaintiff. *Id.* ¶ 106. Although the Complaint does not specify what information was contained in those files, it seems clear that at least some of the information would have pertained to Hersl, as he was involved in the underlying criminal case and the government elected to dismiss the case. Moreover, plaintiff alleges that, over the years, Hersl was the subject of more than twenty-nine Internal Affairs complaints and investigations, as well as negative news coverage. *See id.* ¶¶ 84-87. In addition, the disclosure of Internal Affairs files pertaining to Hersl in a separate prosecution in 2008 also resulted in dismissal. *See* ¶ 86.

The clear upshot of these allegations is that the files disclosed in plaintiff's case in 2008 revealed information of concern about Hersl as well as evidence of BPD's knowledge of Hersl's misconduct. Plaintiff was on inquiry notice as of that time with regard to a basis for a pattern and practice claim against BPD. *See Nasim*, 64 F.3d at 955; *cf. Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 118-19, 756 A.2d 963, 986 (2000) (Wilner, J., dissenting) (stating that, based on the facts known to plaintiffs as of a certain date, they were on inquiry notice; their continued reliance on a lawyer's advice was akin to "a passenger on the *Titanic*, observing the ship plunging into the sea . . . remain[ing] convinced that all was well").

Further, plaintiff has not brought to the Court's attention any legal authority supporting the separation of the accrual of a *Monell* claim from its predicate. Nor has the Court identified any

such authority in Fourth Circuit case law. And, the weight of the relevant case law from other circuits does not seem to support separate accrual rules.

In *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995), the Second Circuit formulated what is known as a theory of delayed accrual as applied to *Monell* claims. The *Pinaud* Court reasoned: "Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's 'policy or custom,' . . . a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" (Quoting *Monell*, 436 U.S. at 694). However, the Second Circuit subsequently cast doubt on *Pinaud*, characterizing its accrual discussion as dicta and declining to rule "that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to a *Monell* claim." *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (per curiam).

Other circuits have similarly expressed skepticism as to the delayed accrual approach. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) ("We likewise decline to change our well-settled accrual rules based on dicta from the Second Circuit's *Pinaud* opinion."); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 (3d Cir. 2013) ("There is also no basis in our precedent for applying . . . a 'delayed accrual' theory."); *see also Caples v. City of Phoenix*, CV-14-02619-PHX-SRB, 2018 WL 4042115, at *3 (D. Ariz. June 28, 2018) (same), *aff'd*, 804 F. App'x 595 (9th Cir. 2020).

I, too, discern no reason for adopting an accrual theory that would save plaintiff's *Monell* claims, especially without briefing on the issue. Therefore, because Counts I through IV are time barred, it would seem that Counts VII through IX likewise founder.

The remaining civil rights claims, Counts V and VI, appear to fail for substantially the same reasons. Count V alleges civil conspiracy under §§ 1983 and 1985, and Count VI alleges "Aider & Abettor" liability under §§ 1983 and 1985. ECF 17 at 27-28. These claims are asserted against all defendants. Both are predicated on allegations that BPD, the Commissioner Defendants, and the IA Defendants acted or failed to act in a manner that permitted, supported, or facilitated Hersl's acts of misconduct against plaintiff. *See id.* Yet, the claims do not receive any direct attention in the briefs.

The theory of the Amended Complaint is that these two counts, like the *Monell* claims, flow from the first four claims alleging constitutional injury by Hersl. Therefore, Counts VI and VII appear similarly barred. *See Massey v. Ojaniit*, 759 F.3d 343, 357–58 (4th Cir. 2014) (concluding that because the plaintiff did not state "a claim for deprivation of a constitutional right," his § 1983 conspiracy claim "was properly dismissed"). Moreover, courts have explained that "there is no such thing as aiding-and-abetting liability under § 1983." *McDonough v. Toles*, 476 F. Supp. 3d 882, 899 (D. Minn. 2020); *see Theriot v. Woods*, 2:09-cv-199, 2010 WL 623684, at *7 (W.D. Mich. Feb. 18, 2010) (same).

In sum, I conclude that Counts I through IV are barred by limitations, on the basis that plaintiff discovered the injury underlying his predicate claims against Hersl well over three years before filing suit. Accordingly, I reject plaintiff's arguments that defendants' fraudulent concealment prevented him from discovering that injury until 2017. *See* ECF 26-1 at 6-8.

That said, the unusual posture of this case precludes dismissal of the claims against Hersl in Counts I through IV. As noted, Hersl was the one defendant to answer the suit, rather than join either motion. Because Hersl has not moved to dismiss the first four claims, they cannot be dismissed.

As for Counts V through IX, it would seem that the limitations clock must have run on those claims because they are predicated on Counts I through IV. However, neither side has addressed whether the RICO claims, if they are timely, could serve as predicates for Counts V through IV. I turn to that critical issue.

## C.

The two remaining claims, Counts X and XI, invoke RICO. These claims receive relatively scant attention in the briefs. The only substantive grounds on which defendants seek dismissal of the RICO claims is limitations. *See* ECF 25-1 at 31-33. Plaintiff devotes just a handful of paragraphs to the issue. *See* ECF 26-1 at 21-22. Defendants make no mention of RICO in their reply.

Congress enacted the Racketeer Influenced and Corrupt Organizations law as Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91–452, 84 Stat. 922 (1970), 18 U.S.C. §§ 1961-1968. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Under 18 U.S.C. § 1962, it is unlawful, *inter alia*, for any person employed by or associated with any enterprise to conduct or participate in the "enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). But, RICO is not limited to criminal cases. In addition to criminal penalties, Congress "granted a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of' the RICO provisions." *ESAB Grp.*, 126 F.3d at 626 (citing 18 U.S.C. § 1964(c)).

A civil RICO action "'is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC,* 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted); *see, e.g., Lewis v. Maryland*, PWG-17-1636, 2018 WL 1425977, at *5 (D. Md. Mar. 22, 2018); *Bailey v. Atlantic Auto. Corp.*, 992 F. Supp. 2d 560,

578 (D. Md. 2014). But, the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

To plead a civil RICO claim, a plaintiff must allege "'1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.'" *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (citation omitted); *see also, e.g.*, *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 503 (D. Md. 2013). A plaintiff must also allege injury to "his business or property." *Morley*, 888 F.2d at 1009 (quoting 18 U.S.C. § 1964(c)).[10]

A prevailing plaintiff in a civil RICO action is entitled to treble damages, costs, and attorney's fees. *Awappa*, 615 F.3d at 317; *see Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 660 (2008); 18 U.S.C. § 1964(c)). The Supreme Court has characterized RICO's civil penalties as "'drastic.'" *Awappa*, 615 F.3d at 317 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989)).

"The statute of limitations on private civil RICO claims is four years, beginning on the date the plaintiff 'discovered, or should have discovered, the injury.'" *CVLR Performance Horses*, 792 F.3d at 476 (quoting *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001)). The discovery rule, discussed above, also applies to the accrual of a cause of action under RICO. *CVLR Performance Horses*, 792 F.3d at 476. The Supreme Court has instructed that with RICO, as with the discovery rule pertaining to other federal causes of action, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."

---

[10] Plaintiff alleges that he lost "employment opportunities" because of the prosecution. ECF 17, ¶ 191.

*Rotella*, 528 U.S. at 555; *see Levy v. BASF Metals Ltd.*, 917 F.3d 106, 109 (2d Cir.), *cert. denied,* 140 S. Ct. 536 (2019) ("'A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim.'") (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009); *see also, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 915 F.3d 1, 15 (1st Cir. 2019); *Koch*, 699 F.3d at 148.

But, even "after *Rotella* . . . there remains some ambiguity about the contours of the accrual rules for civil RICO claims." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 926 (7th Cir. 2015). The *Rotella* Court contemplated that after discovery of an injury, while the limitations clock is ticking, a plaintiff might have to undertake "considerable enquiry and investigation" to make "a responsible judgment about the actionability" of his RICO claim. *Rotella*, 528 U.S. at 556; *see Est. of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 394 (6th Cir. 2015) ("So long as the plaintiff knows he has been injured and who has caused the injury, he has the ability to investigate the remaining elements of his cause of action and prosecute the claim."). However, if "'despite the exercise of reasonable diligence'" a plaintiff "'cannot discover his injurer's (or injurers') identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information.'" *Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 930 (citation omitted).

The doctrine of equitable tolling "applies 'when the plaintiff, exercising due diligence, was unable to discover evidence vital to a claim until after the statute of limitations expired.'" *Id.* (citation omitted). In particular, such tolling is warranted when a plaintiff demonstrates fraudulent concealment—that is, that (1) the defendant "fraudulently concealed" the facts underlying the claim, and (2) "the claimant failed to discover those facts within the statutory period, despite (3)

the exercise of due diligence." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987); *see Koch*, 699 F.3d at 157 (discussing the same elements of fraudulent concealment as applied to a RICO claim); *cf. United States v. Kwai Fun Wong,* 575 U.S. 402 (2015) (detailing the development of equitable tolling in federal statutory interpretation and finding that equitable tolling may apply to the time bar for bringing suit against the federal government under the Federal Tort Claims Act).

By now, it is clear that, according to the Amended Complaint, plaintiff had knowledge of his injury caused by Hersl as early as 2007 or 2008. If the RICO limitations period began running during that period, then it would have expired no later than 2012. Although such knowledge is sufficient to satisfy the injury discovery rule as applied to plaintiff's § 1983 claims against Hersl, it is not sufficient to trigger the limitations clock for the RICO claims.

As of 2008, plaintiff was not aware of the identities of all of the defendants who allegedly injured him through a pattern of racketeering activity. *See Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 930. Thus, he could not have discovered that his injury was caused by a RICO enterprise engaged in a pattern of racketeering activity. More important, I am not inclined to conclude, at this juncture, that plaintiff could have discovered the facts necessary to assert his RICO claims, however diligent he might have been, before the federal indictments of the GTTF defendants became public in March 2017. *See id.*

To be sure, the disclosure of Internal Affairs files pertaining to Hersl in *United States v. Rich* enabled plaintiff to investigate BPD's knowledge of Hersl's misconduct, and by extension, a pattern and practice of unlawful conduct within BPD. But, it is not clear that the disclosure likewise enabled plaintiff to uncover a RICO enterprise engaged in a pattern and practice of

racketeering activity.  After all, the criminal RICO enterprise alleged in the 2017 indictments of the GTTF defendants involved several participants, not Hersl alone.

Thus, the Amended Complaint seems to suggest that the RICO claims accrued in March 2017.  Plaintiff asserted his RICO claims in the Amended Complaint, which was filed in September 2020, less than four years later.  Therefore, at least on the face of the suit, I conclude that Counts X and XI are not time barred.

## V.  Sufficiency of the RICO Claims

Neither side has substantively addressed the sufficiency of plaintiff's RICO claims. Therefore, at this juncture, I decline to dismiss Counts X and XI.

## VI.  Conclusion

For the foregoing reasons, I shall grant the Motions in part and deny them in part.

An Order follows.

Date: June 24, 2021                                    _____/s/_____
                                                      Ellen L. Hollander
                                                      United States District Judge