IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC RICH,                          *
                                    *
            Plaintiff,              *
                                    *
      vs.                           *        Civil Action No. ADC-20-488
                                    *
DANIEL HERSL,                       *
                                    *
            Defendant.              *
                                    *
      * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Daniel Hersl ("Defendant Hersl") has filed a Motion for Judgment on the Pleadings (ECF No. 68) as to Plaintiff Eric Rich's ("Plaintiff") Amended Complaint (ECF No. 17).[1] Defendant Hersl moves the Court to dismiss Plaintiff's Amended Complaint with prejudice and without leave to amend. ECF No. 68. Plaintiff responded in opposition (ECF No. 73), and Defendant Hersl replied (ECF No. 76). After considering the Motion and the responses thereto, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendant Hersl's Motion is GRANTED IN PART and DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

This case alleges the deprivation of Plaintiff's civil rights and the "egregious, excessive[,] and objectively unreasonable violation of numerous rights under the Fourth and Fourteenth Amendment to the United States Constitution." ECF No. 17 at 4. Defendant Hersl is the sole remaining Defendant in this action. He is a former Baltimore Police Department officer and

---

[1] On August 13, 2021, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636(c) by consent of the parties. ECF No. 50.

1

member of its Gun Trace Task Force ("GTTF"). *Id.* ¶ 2. On or about October 2, 2007, Defendant Hersl arrested Plaintiff in Baltimore City for possession of an unregistered Llama 9mm handgun. *Id.* ¶¶ 95–96. A week prior to the arrest, Defendant Hersl "threatened to plant a gun on Plaintiff." *Id.* ¶ 99. Plaintiff alleges the evidence "was actually fabricated by Defendant Hersl." *Id.* at 4. Specifically, Plaintiff asserts that "Defendant Officers arrested [him] for illegal possession of a firearm after [they] planted one at the scene."[2] *Id.* ¶ 111. Plaintiff filed a complaint with BPD's Internal Affairs Division, and his defense counsel requested and was denied a copy of the complaint. *Id.* ¶¶ 99–100. Subsequently, Plaintiff was charged under state law with possessing a handgun when prohibited from doing so by a prior conviction. *Id.* ¶ 98. Plaintiff's state charges were eventually entered nolle prosequi. *Id.* ¶ 103. Plaintiff was also indicted by the United States Attorney's Office for charges related to his October 2, 2007 arrest. *Id.* ¶ 101. Plaintiff's defense counsel moved to compel BPD to produce the Internal Investigation Division Files in his federal case, and, after a review of the files, the U.S. Attorney's Office dismissed Plaintiff's indictment with prejudice on June 9, 2008. *Id.* ¶¶ 104, 106. Plaintiff remained detained until his indictment was dismissed. *Id.* ¶¶ 97, 106.

Plaintiff details additional allegations from lawsuits brought against Defendant Hersl, including pouring beer on a woman and throwing a bottle that struck her face while off-duty, falsely arresting a woman for selling drugs, breaking a woman's arm while searching for a suspect, and breaking a man's jaw and nose. *Id.* ¶¶ 84, 87. In total, Defendant Hersl was subject to more than twenty-nine Internal Affairs complaints during his time on the force. *Id.* ¶ 85. In February of

---

[2] Plaintiff asserts that the reference to "Defendant Officers" in Paragraph 111 is a "simple typographical error" that clearly refers to Defendant Hersl. ECF No. 73-1 at 4 n.1. I agree based on the additional allegations in the Amended Complaint. *See* ECF No. 17 at 4; ¶¶ 111–12.

2018, Defendant Hersl was convicted of racketeering conspiracy, racketeering aiding and abetting, racketeering, and robbery. *Id.* ¶ 82.

On February 24, 2020, Plaintiff filed suit in this Court. ECF No. 1. Plaintiff filed an Amended Complaint on September 29, 2020, alleging eleven counts against fifteen defendants. ECF No. 17. Beyond Defendant Hersl, the Defendants consisted of Baltimore Police Department, former police commissioners, and former members of the Internal Affairs Division (collectively, "BPD Defendants"). *Id.* ¶¶ 8–17. BPD Defendants then separately moved to dismiss Plaintiff's Amended Complaint. ECF Nos. 25, 39. On June 24, 2021, the Court dismissed the Amended Complaint in part, explaining that Plaintiff's "civil rights claims are time-barred and thus subject to dismissal." ECF No. 42 at 3. The remaining counts then included:

Count I: Illegal Arrest in Violation of 42 U.S.C. § 1983 against Defendant Hersl;
Count II: False Imprisonment in Violation of 42 U.S.C. § 1983 against Defendant Hersl;
Count III: Malicious Prosecution in Violation of 42 U.S.C. § 1983 against Defendant Hersl;
Count IV: Violation of Article 24 of the Maryland Declaration of Rights against Defendant Hersl;
Count X: Violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act under 18 U.S.C. § 1962(b), (c) against all Defendants; and
Count XI: Conspiracy to Violate the RICO Act under 18 U.S.C. § 1962(d) against all Defendants.

*Id.* at 27 ("Because Hersl has not moved to dismiss the first four claims, they cannot be dismissed."). BPD Defendants then moved for judgment on the pleadings for Counts X and XI, which the Court granted. ECF No. 66. Because Defendant Hersl did not join in that motion, the Court explicitly declined to dismiss Counts X and XI against him.[3] *Id.* at 4 n.4. Accordingly, the remaining counts in Plaintiff's Amended Complaint are now Counts I, II, III, IV, X, and XI against

---

[3] Defendant Hersl states that it is unclear whether Counts X and XI were dismissed against him. ECF No. 68-1 at 2 n.2. On the contrary, this Court's Order (ECF No. 67) clearly stated that Counts X and XI were dismissed against all Defendants except Defendant Hersl. ECF No. 67. Defendant Hersl neither filed his own motion nor joined in the motion requesting judgment on Counts X and XI. And finally, if the above was not sufficiently clear, the Court also addressed this point explicitly in its Memorandum Opinion, explaining that it would not dismiss the claims against Defendant Hersl *sua sponte.* ECF No. 66 at 4 n.4.

Defendant Hersl. Defendant Hersl now moves for judgment on the pleadings with respect to these remaining counts. ECF No. 68.

**DISCUSSION**

**A. Standard of Review**

    1.  Rule 12(c) Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012)). A Rule 12(b)(6) motion tests the sufficiency of a complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler*, 702 F.3d at 752 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Thus, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in [Plaintiff's] complaint as true and drawing all reasonable factual inferences from those facts in [Plaintiff's] favor, it appears certain that [Plaintiff] cannot prove any set of facts in support of his claim entitling him to relief." *Drager*, 741 F.3d at 474 (quoting *Edwards*, 178 F.3d at 244). "A Rule 12(c) motion should be granted when the pleadings fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, —— F.Supp.3d ——, 2021 WL 4214837, at *2 (D.Md. Sept. 16, 2021) (citations omitted).[4]

---

[4] Defendant Hersl appears to have copied without reference the Court's standard of review from its previous Memorandum Opinion. *Compare* ECF No. 66 at 3, *and* ECF No. 68-1 at 3.

4

**B. Defendant Hersl's Motion**

Defendant Hersl requests this Court dismiss Plaintiff's Amended Complaint with prejudice and without leave to amend. ECF No. 68. In particular, Defendant Hersl asserts that (1) Plaintiff's Amended Complaint is wholly deficient of allegations with respect to Counts I and II; (2) Plaintiff failed to comply with the notice requirements of the Local Government Tort Claims Act ("LGTCA"); (3) Plaintiff failed to allege any pattern of racketeering activity necessary for a RICO violation; and (4) Plaintiff failed to allege that Defendant Hersl conspired with anyone to violate RICO. *Id.* at 5–13. Defendant Hersl presents no argument with respect to Count III. As neither side has substantively addressed the sufficiency of Count III, the Court declines to dismiss it. I address each of Defendant Hersl's arguments below.

1. Federal Claims under 42 U.S.C. § 1983[5]

Defendant Hersl asserts that Plaintiff's Amended Complaint is "wholly deficient" in detailing what Defendant Hersl allegedly did to Plaintiff. ECF No. 68-1 at 4. He contends that there were no allegations he lacked legal justification for the stop and explains that a "brief investigative detention" is justified based on an articulable, reasonable suspicion. *Id.* at 4–5 (citing *Terry v. Ohio*, 393 U.S. 1, 30 (1968)). Therefore, Defendant Hersl asserts that the allegations that he lacked probable cause or a warrant does not require a finding that Plaintiff's Fourth Amendment right was violated. *Id.* at 4–5. In response, Plaintiff asserts that, even if the stop was constitutional,

---

[5] The Amended Complaint states that Counts I and II are brought pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and Count III is brought pursuant to 42 U.S.C. §§ 1983, 1985. ECF No. 17. Section 1985 concerns conspiracy to interfere with civil rights and requires two or more persons conspiring. 42 U.S.C. § 1985. The Amended Complaint does not detail a conspiracy with respect to Counts I through III. Section 1988, in turn, concerns proceedings in vindicating civil rights. 42 U.S.C. § 1988. Accordingly, the Court construes Plaintiff's Counts I through III as asserted pursuant to § 1983.

the subsequent arrest and detention were illegal as the basis of the arrest was planted on Plaintiff by Defendant Hersl. ECF No. 73-1 at 4. I agree with Plaintiff.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Section 1983 "authorizes a suit for damages against any individual 'who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. *See Corral v. Montgomery Cnty.*, 4 F.Supp.3d 739, 744 (D.Md. 2014). Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

An arrest is a seizure of a person and therefore must be "reasonable under the circumstances." *District of Columbia v. Wesby*, —— U.S. ——, 138 S.Ct. 577, 585 (2018) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). "Probable cause exists if the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Stutzman v. Krenik*, 350 F.Supp.3d 366, 377 (D.Md. 2018) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby*, 138 S.Ct. at 586 (citations omitted).

Probable cause "deals with probabilities and depends on the totality of the circumstances" and is thus "'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (first quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)) (next quoting *Illinois v. Gates,* 462 U.S. 213, 232 (1983)). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* (citing *Atwater v. Lago Vista,* 532 U.S. 318, 354 (2001). In contrast, "'[t]o prove an absence of probable cause, [Plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude' that [Plaintiff] had violated the relevant statute." *Id.* (quoting *Brown v. Gilmore,* 278 F.3d 362, 368 (4th Cir. 2002)).

Here, Plaintiff has alleged that Defendant Hersl threatened to plant a handgun on Plaintiff, and a week later, planted the handgun and arrested Plaintiff for possession of a handgun. ECF No. 17 ¶¶ 95–96, 99. He alleges that "[t]here was no factual basis for the allegation that Plaintiff was armed with a firearm," and that "Defendant Officers planted one at the scene." *Id.* ¶¶ 109, 111. The context makes clear this allegation pertains to Defendant Hersl. *See id.* at 4. Accordingly, I agree with Plaintiff that the issue is not whether Defendant Hersl's initial stop of Plaintiff was constitutional but instead whether he had probable cause to arrest and imprison him, constituting a seizure of his person. An allegation that Defendant Hersl planted the evidence of the crime certainly does not support a finding of probable cause. Accordingly, Plaintiff's Amended Complaint alleges that he was subject to an unreasonable seizure of his person when he was arrested and subsequently detained without probable cause in violation of the Fourth Amendment. He has thus sufficiently alleged violations of § 1983. The Motion is DENIED as to Counts I, II, and III.

7

2. Maryland Declaration of Rights Claim and the LGTCA

Defendant Hersl next asserts that the LGTCA bars Plaintiff from bringing a claim for unliquidated damages because he failed to provide the notice required by Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1). ECF No. 68-1 at 5–8. Plaintiff contends he substantially complied with the requirement by filing an Internal Affairs complaint within 180 days and then filing formal LGTCA notice in March 2009, more than a year after his arrest. ECF No. 73-1 at 5–6. He further asserts that the Court should exercise its discretion to permit the claim because Defendant Hersl has not asserted prejudice. *Id.* at 6. I find Defendant Hersl's argument compelling with respect to Count IV.

The LGTCA includes "procedural prerequisites" that Plaintiff must meet in order to bring a cause of action against a local government or its employee. *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 639–40 (2015). It applies to "all Maryland constitutional and common law tort claims for unliquidated damages." *Johnson v. Baltimore Police Dep't*, 452 F.Supp.3d 283, 315 (D.Md. 2020) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-304). *See Rounds*, 441 Md. at 636 ("[G]enerally, the LGTCA notice requirement applies to both state constitutional and non-constitutional tort claims for unliquidated damages"). Specifically, the LGTCA prohibits Plaintiff from bringing "an action for unliquidated damages" against a local government or its employee unless "notice of the claim . . . is given within," at the time of the alleged incident, 180 days of the injury.[6] *Id.* at 640; Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1). "Compliance with the notice requirement is a 'condition precedent' to suit." *Johnson*, 452 F.Supp.3d at 315 (quoting *Rios v. Montgomery Cnty.*, 386 Md. 104, 127 (2005)). The required notice in the present case was to be provided to the Baltimore City Solicitor. Md. Code Ann., Cts. & Jud. Proc. § 5-304(c)(3)(i).

---

[6] The law now requires notice be given within one year of the injury. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1).

8

Strict compliance with the LGTCA notice provision is not always required. *See Abdus-Shahid v. Mayor & City Council of Baltimore*, 674 F.App'x 267, 273 (4th Cir. 2017) ("Maryland courts do not require strict compliance with the LGTCA's notice provisions."). First, failure to comply with the notice provisions may not require dismissal where Plaintiff has "substantially complie[d]" with the requirement. *Ellis v. Hous. Auth. of Baltimore City*, 436 Md. 331, 342 (2013). Plaintiff substantially complies with the LGTCA notice requirement where:

> (1) the plaintiff makes "some effort to provide the requisite notice"; (2) the plaintiff does "in fact" give some kind of notice; (3) the notice "provides . . . requisite and timely notice of facts and circumstances giving rise to the claim"; and (4) the notice fulfills the LGTCA notice requirement's purpose, which is to apprise [the] local government of its possible liability at a time when [the local government] could conduct its own investigation, i.e., while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and [the local government's] responsibility in connection with it.

*Id.* at 342–43 (quoting *Faulk v. Ewing*, 371 Md. 284, 298–99 (2002)). Defendant Hersl correctly states that Maryland courts have concluded that the filing of an Internal Affairs complaint does not substantially comply with the statutory notice requirement. *See White v. Prince George's Cnty.*, 163 Md.App. 129, 147 (2005) (regarding an Internal Affairs Division complaint for police brutality); *Wilbon v. Hunsicker*, 172 Md.App. 181, 201 (2006) (same). The Court of Special Appeals "rejected that argument because '[the claimants] did not provide notice to an entity with responsibility for investigating tort claims . . . [i]nstead, [the claimants] sent notice to the [internal affairs departments][,] [t]he content of that complaint pertained to [the claimants'] allegation[s] of police brutality, not to tort claims arising from such conduct.'" *Hansen v. City of Laurel*, 193 Md.App. 80, 95–96 (2010), *aff'd*, 420 Md. 670 (2011) (alterations in original) (quoting *Wilbon*, 172 Md.App. at 201). Internal Affairs investigations are "vastly different from an investigation of a tort claim for damages"; therefore, "[b]ecause the internal affairs departments

were not responsible for investigating tort claims," filing a complaint does not substantially comply with the LGTCA notice requirement. *Id.*

Second, there is a statutory exception: "unless the defendant can affirmatively show that [his] defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d). Thus, the decision is within the Court's discretion. *Prince George's Cnty. v. Longtin*, 419 Md. 450, 467 (2011). However, Plaintiff must first show "good cause" for his failure to comply with the notice provision. *Id.* ("By the language of the statute, the burden is on the claimant first to show 'good cause.'"). The test for good cause is "whether [Plaintiff] prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 361 Md. 258, 271 (2000) (quoting *Westfarm Assoc. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 676–77 (4th Cir. 1995)). If good cause exists, the burden then shifts to Defendant to show that he has been prejudiced by the lack of notice. *Johnson*, 452 F.Supp.3d at 317 (citing *Longtin*, 419 Md. at 467).

Here, the case law is clear. Plaintiff's filing of an Internal Affairs complaint does not satisfy the LGTCA notice requirement. *See Hansen*, 193 Md.App. at 95–96. The fact that Plaintiff's then-counsel filed the proper notice over a year later certainly does not constitute substantial compliance. Indeed, beyond the Internal Affairs complaint, Plaintiff provided no notice within 180 days of his arrest that put the government or Defendant Hersl on notice as to the possible tort claim and liability. *See Ellis*, 436 Md. at 342–43. Moreover, I agree that Plaintiff has failed to meet his burden to show good cause to trigger the statutory exception to the LGTCA notice requirement. The exception requires that Plaintiff first show good cause for his failure to comply with the notice

provision. *Longtin*, 419 Md. at 869. Plaintiff has offered no such good cause, so the Court may not reach the inquiry of whether Defendant Hersl has shown prejudice. *Id.* Accordingly, Plaintiff has both failed to strictly comply with the LGTCA notice requirement and has failed to show either substantial compliance or good cause the failure to comply. His claim for damages pursuant to the Maryland Declaration of Rights is thus barred.

   3.   Federal RICO Claims under 18 U.S.C. § 1962

   Finally, Defendant Hersl claims that Plaintiff's RICO and conspiracy to violate RICO claims cannot stand because he failed to allege any pattern of racketeering activity, a second act of racketeering activity, and any conspiracy between Defendant Hersl and anyone. ECF No. 68-1 at 8–11. Plaintiff offers no argument in response. As an initial matter, "in failing to respond" to Defendant Hersl's arguments, "Plaintiff concedes the point." *Stenlund v. Marriott Int'l, Inc.*, 172 F.Supp.3d 874, 887 (D.Md. 2016) (citing *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010)). *See Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (explaining that "an outright failure to join in the adversarial process" by failing to respond to a movant's arguments in a response brief "would ordinarily result in waiver"); *Mentch v. E. Sav. Bank, FSB*, 949 F.Supp. 1236, 1246–47 (D.Md. 1997) ("I agree with [the defendant] that [the plaintiff] has abandoned her [] claim by failing to address that claim in her opposition."); *Giannasca v. Bank of Am., N.A.*, No. CV ELH-17-2110, 2018 WL 6046814, at *13 (D.Md. Nov. 19, 2018) (explaining that the plaintiff "concede[d]" the defendants' argument by failing to respond to it). However, even without Plaintiff's concession, I still conclude that Plaintiff has failed to detail sufficient facts to plausible allege RICO violations.

To plead a civil RICO claim, Plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[7] *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiff also must prove injury to his business or property. *Id.* (quoting 18 U.S.C. § 1964(c)). Plaintiff here alleges violations to paragraphs (b), (c), and (d). I address each paragraph in turn.

Paragraph (b) prohibits any person "through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" which engages in or affects interstate or foreign commerce. 18 U.S.C. § 1962(b). A "racketeering activity" is "any act or threat" involving either state law crimes of murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical, or any act indictable under specified federal statutes. 18 U.S.C. § 1961(1). *See Davis v. Wilmington Finance, Inc.*, No. CIV. PJM 09-1505, 2010 WL 1375363, at *3 (D.Md. Mar. 26, 2010). To establish a pattern of racketeering activity under the RICO statute, Plaintiff must allege "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Ekstrom v. Cong. Bank*, No. CV ELH-20-1501, 2020 WL 6565251, at *18 (D.Md. Nov. 9, 2020), *motion to certify appeal denied,* 2021 WL 119000 (D.Md. Jan. 13, 2021) (quoting 18 U.S.C. § 1961(5)).

Plaintiff must show that the predicate acts "are [1] related and [2] that they amount to or pose a threat of continued criminal activity." *Id.* (emphasis omitted) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Acts are related if they 'have the same or similar purposes,

---

[7] Defendant Hersl appears to have copied without reference the Court's analysis of RICO claims from its previous Memorandum Opinion. *Compare* ECF No. 66 at 5–6, 8–9, *and* ECF No. 68-1 at 8–10.

results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 240). The Court employs "a commonsensical, fact-specific approach" to determine whether a pattern of racketeering activity exists. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citing *H.J. Inc.*, 492 U.S. at 241 (1989)). *See Starr v. VSL Pharms., Inc.*, 509 F.Supp.3d 417, 439 (D.Md. 2020) (quoting *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988) ("[T]he existence of a pattern is to be determined not based on 'mechanical rules,' but on a 'case-by-case' basis upon consideration of 'all the facts and circumstances of the particular case,' including 'criminal dimension and degree.'")); *Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 480 (D.Md. 2009) (explaining the same).

Further, paragraph (c) prohibits any person "employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In addition to the pattern of racketeering activity required in § 1962(b), "[t]he Supreme Court has authorized use of the 'operation or management' test, which requires that a defendants [sic] must have some part in directing the affairs of the enterprise" for liability under § 1962(c). *Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F.Supp.2d 298, 325 (D.Md. 2000), *adhered to on denial of reconsideration* (June 27, 2000) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). "Mere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Thomas v. Ross & Hardies*, 9 F.Supp.2d 547, 554 (D.Md. 1998).

Finally, paragraph (d) prohibits the conspiracy to violate any of the subsections of § 1962. 18 U.S.C. § 1962(d). *See McClain v. Wells Fargo Bank, N.A.*, No. PWG 20-CV-2035, 2021 WL

13

3852322, at *7 (D.Md. Aug. 27, 2021). "The heart of a conspiracy is the agreement to do something that the law forbids." *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990). In a claim under § 1962(d), Plaintiff "must allege that each defendant agreed that another coconspirator would commit two or more acts of racketeering." *Walters v. McMahen*, 795 F.Supp.2d 350, 355 (D.Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012) (citations omitted). Further, Plaintiff must describe the conspiracy in detail, "including the identity of the co-conspirators, the object of the conspiracy[,] and the date and substance of the conspiratorial agreement." *Id.* (quoting *Cruz v. Cinram Intl. Inc.,* 574 F.Supp.2d 1227, 1236 (N.D.Ala. 2008)). Where the plaintiffs "fail to provide any facts indicative of such an agreement, including when or where the agreement took place, or the specific substance of any communications," the pleading standard is not met. *See id.* at 355–56.

I am convinced that Plaintiff has failed to meet the pleading standard to show Defendant Hersl violated RICO or conspired to violate RICO. First, Plaintiff does not appear to have alleged at least two specific and related acts of racketeering activity by Defendant Hersl to show a pattern. The Amended Complaint alleges Defendant Hersl and other previous BPD Defendants "repeatedly committed extortionate conduct against Plaintiff and other Baltimore citizens, planted evidence against Plaintiff and other Baltimore citizens, intimidated witnesses reporting police misconduct including Plaintiff, and obstructed justice by failing to properly investigate internal affairs complaints." ECF No. 17 ¶ 188. However, Plaintiff provides no detail to support these broad claims. Instead, the only specific acts Plaintiff alleges of Defendant Hersl—besides his own alleged illegal arrest—are an act while off duty, a false arrest, and excessive force. *Id.* ¶¶ 84, 87. The pleadings make no effort to link the specific allegations against Defendant Hersl to a scheme of racketeering activity. In doing so, he fails to identify a pattern and instead alleges only

14

unsupported conclusions and isolated events. *See H.J. Inc.*, 492 U.S. at 240. While Defendant Hersl was criminally convicted of RICO violations, Plaintiff's Amended Complaint must still state a claim upon which relief can be granted. Here, that requires allegations of related predicate acts that show a pattern of racketeering activity.

Plaintiff has also failed to allege that Defendant Hersl directed the affairs of any of the identified enterprises. Plaintiff solely alleges that Defendant Hersl was an officer of the GTTF and that all Defendants "unlawfully engaged . . . in the racketeering activities set forth in this Amended Complaint and, on information and belief, on tens of thousands of occasions during the part [sic] fifteen years, through a pattern of racketeering activity, and have acquired directly and indirectly control of the named enterprises," including the GTTF. *Id.* ¶ 193. Such bare allegations are not sufficient to show more than "mere participation" in the enterprise to satisfy the operation or management test. *See Thomas*, 9 F.Supp.2d at 554. Plaintiff has thus failed to plausibly allege violations of § 1962(b) or (c).

Finally, with respect to conspiracy in § 1962(d), Plaintiff has similarly not identified any conspiratorial agreement (nor the substance of that agreement) between Defendant Hersl and another officer. *See Walters*, 795 F.Supp.2d at. He alleges only that Defendants "have conspired and continue to conspire." ECF No. 17 ¶ 196. This is nothing more than a conclusory allegation in a complaint that the Court may not merely accept that as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). While the Amended Complaint does suggest that Defendant Hersl was working with another officer when he arrested Plaintiff, it identifies no conspiratorial agreement to violate RICO nor more than a single allegation related to Plaintiff's

15

arrest. Plaintiff has neither pled sufficient facts to support his RICO claims nor defended his RICO claims from Defendant Hersl's challenge. Accordingly, Counts X and XI must be dismissed.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant Hersl's Motion for Judgment on the Pleadings is GRANTED IN PART, with respect to Counts IV, X, and XI, and DENIED IN PART, with respect to Counts I, II, and III. Given that Plaintiff has already filed an Amended Complaint and has not requested leave to further amend in his response, dismissal with prejudice is proper. Accordingly, Counts IV, X, and XI against Defendant Hersl are DISMISSED WITH PREJUDICE. A separate Order will follow.

Date: 5 May 2022

A. David Copperthite
United States Magistrate Judge

16